893 So.2d 7 (2004)
STATE of Louisiana
v.
Allen Scott WILLIAMS.
No. 2003-K-3514.
Supreme Court of Louisiana.
December 13, 2004.
Rehearing Denied February 25, 2005.
*9 David E. Stone, for applicant.
Charles C. Foti, Jr., Attorney General, J. Reed Walters, District Attorney, for respondent.
JOHNSON, Justice.
Defendant, Allen Scott Williams, was charged with hit-and-run driving under LSA-R.S. 14:100. Following a bench trial, the trial court found defendant guilty and sentenced him to seven years imprisonment at hard labor. The court of appeal affirmed the conviction and sentence. In his writ application to this court, defendant argues that the lower courts erred in interpreting the elements set forth in R.S. 14:100 and in concluding that these elements were proven beyond a reasonable doubt. Defendant also contends that his sentence is excessive in violation of LSA-Const. Art. I, § 20. After a thorough review, we conclude that the evidence supports defendant's conviction, and we therefore affirm the defendant's conviction and sentence.

*10 FACTS AND PROCEDURAL HISTORY
On July 16, 2001, at approximately 3:00 p.m., defendant, Allen Scott Williams,[1] was driving a black Oldsmobile Toronado southbound on Louisiana Highway 459 in LaSalle Parish behind an 18-wheel tractor-trailer driven by Wayne George. Defendant passed the 18-wheeler and followed the highway up a hill. As he approached the apex of the hill, defendant prepared to execute a left turn on to Pleasant Hill Road by engaging his left-turn signal. As he did so, his car began to ease into the northbound lane of traffic. At that moment, a white Ford Mustang, driven by 18-year old Jada Morphis, reached the apex of the hill coming from the opposite direction. Both Miss Morphis and defendant recognized their apparent collision course, and both attempted to avoid an accident. Defendant recovered control of his vehicle and proceeded to complete his left turn onto Pleasant Hill Road. Unfortunately, Miss Morphis, in an attempt to regain control of her vehicle, overcompensated, and entered the lane of travel of the 18-wheeler driven by Mr. George. Mr. George attempted to avoid colliding with Miss Morphis by swerving towards the right. Despite Mr. George's efforts to avoid the collision, Miss Morphis' vehicle crashed head-on with the 18-wheeler. After the collision, Miss Morphis' vehicle came to a stop in the southbound lane, while Mr. George's vehicle entered a ditch, overturned, and came to rest on the driver's side.
After completing his turn, defendant brought his vehicle to a stop and watched as Miss Morphis hit the 18-wheeler. Realizing that the accident was "serious," defendant drove to a nearby residence on Pleasant Hill Road and called the LaSalle Parish Sheriff's Office to report the accident.[2] Notably, defendant did not identify himself to the dispatcher.
On the evening of the accident, Joshua Pritchard gave a statement to police officers in which he expressed that defendant came to his sister's residence driving an "older model black car" and asked to use the telephone to report a "bad wreck" on the Aimwell (Hwy 459) Road. He stated that after defendant reported the accident, he began "acting very nervous and was shaking." He further stated that defendant did not say another word and left going in the opposite direction from the accident.
Emergency personnel were dispatched to the scene of the accident and arrived shortly after defendant's call. Miss Morphis was evacuated by helicopter to LaSalle General Hospital and was pronounced dead within 45 minutes of her arrival. Mr. George received minor injuries and was treated at the emergency room and released.[3]
Louisiana State Trooper Tracy Howard began an investigation on the afternoon of the accident. At 6:48 p.m., nearly three hours after the accident, he learned that a third vehicle, dark in color with twin stacked antennas, had been involved in the accident. After following up on the information *11 he had been given, Trooper Howard was able to ascertain that defendant was involved. The LaSalle Parish Sheriff's Office contacted defendant at 7:50 p.m. and instructed him to report to the sheriff's office at 6:00 a.m. the following morning. Defendant complied.
The state subsequently charged defendant with hit-and-run driving in violation of R.S. 14:100. Defendant waived his right to a jury trial, and following a bench trial, he was found guilty as charged. The trial court subsequently denied defendant's motion for a post verdict judgment of acquittal and/or motion for new trial. The trial court ordered a pre-sentence investigation, which revealed that defendant had been arrested for driving while intoxicated, reckless driving, and excessive speed in 1985 and for driving while intoxicated, resisting by flight, and driving with no headlights in 1997. Considering defendant's prior arrests, the trial court stated:
* * *
I find that there is, because of your past record and your history of being a dangerous driver and doing some of the things that you have done up until now that there is an undue risk that if I give you a suspended sentence or a probated sentence that you will commit another crime and hurt some people. I find that you are in need of correctional treatment in a custodial environment that could be provided most effectively by your commitment to the department of corrections. I find that any lesser sentence will deprecate the seriousness of this crime.
* * *
The trial court went on to sentence defendant to seven years imprisonment at hard labor. Defendant filed a motion to reconsider the sentence. The trial court reconsidered defendant's sentence but expressly declined to change it.
Defendant appealed, claiming that his conviction rested upon insufficient evidence and that the trial court imposed an excessive sentence. The court of appeal affirmed, finding that the trial court correctly held that defendant caused the accident; failed to stop; failed to give his identity; and failed to render reasonable aid. The court of appeal further found that the trial court did not impose an excessive sentence. State v. Williams, 03-0387 (La.App.3 Cir.10/15/02), 855 So.2d 442.
In his dissent, Judge Thibodeaux expressed his belief that defendant did not fail to stop his vehicle as required by the statute, because after he completed his left turn, he brought his car to a complete stop long enough to view the accident. Further, in Judge Thibodeaux's view, after stopping and observing the accident, the defendant rendered reasonable aid by driving quickly to the nearest residence and calling the Sheriff's office. Accordingly, Judge Thibodeaux would have reversed defendant's conviction.
Following his conviction, defendant sought review by this Court. By order dated May 7, 2004, this Court granted defendant's writ application. State v. Williams, 03-3514 (La.5/7/04), 872 So.2d 1068.

DISCUSSION
First, defendant argues that the evidence adduced at trial was insufficient to support his conviction. Specifically, he contends that the state failed to prove all of the elements of the crime of which he is charged.
"In reviewing the sufficiency of the evidence to support a conviction, an appellate court in Louisiana is controlled by the standard enunciated by the United States *12 Supreme Court in Jackson v. Virginia, 433 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).... [T]he appellate court must determine that the evidence, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime had been proved beyond a reasonable doubt." State v. Captville, 448 So.2d 676, 678 (La.1984).
LSA-R.S. 14:100, the statute under which defendant was convicted, defines "hit-and-run driving" as "the intentional failure of the driver of a vehicle involved in or causing any accident, to stop such vehicle at the scene of the accident, to give his identity, and to render reasonable aid." Emphasis added.

"Involved in or Causing Any Accident"
In the instant case, regarding the first element contained within LSA-R.S. 14:100, defendant argues that the evidence submitted at trial does not indicate that he was "involved in" the accident because there was no contact between his vehicle and Miss Morphis' vehicle. Wayne George, the driver of the chip truck which collided with Miss Morphis' vehicle, testified that he did not witness any contact between defendant's vehicle and Miss Morphis' vehicle. Additionally, Louisiana State Trooper Tracy Howard, who investigated the accident, testified that he examined Miss Morphis' vehicle post-collision, and there was no indication that there was any contact between her vehicle and defendant's.
Defendant urges that, not only was he not involved in the accident, but he did not cause the accident, as he was within his lane of travel when he began his left turn. Instead, he argues that Miss Morphis caused the accident by straying from her lane of travel. In his statement to police the day after the accident, defendant stated that Miss Morphis' car was "about two feet left of center." Similarly, during the trial, defendant testified that Miss Morphis' vehicle was in his lane, and he swerved to avoid a collision.
Mr. George, the only other eyewitness to the accident, also gave a written statement to police officers, in which he asserted that defendant's car was "about a half a car width over the center line" when Miss Morphis' car came over the hill. He stated that Miss Morphis "swerved to the right to miss [defendant's] car," and she collided with his 18-wheeler as she tried to correct her swerve. Similarly, during the trial, Mr. George testified as follows:
I was southbound on 459 and I just got past the gravel pits. There was a car behind me and the next thing I knew the car had passed me. It was a black car that passed me going up the hill. After he passed me, he put on his brakes and turn signal and attempted a left-hand turn. And he was across the center line. And at about the same time, there was a white car topped the hill going north. And it swerved to the  well, it would've been to their right and went in the ditch to miss him and when she corrected to come out of the ditch, well, she crossed all the way across the highway and hit my truck.
(Emphasis added). According to Mr. George, defendant's black vehicle was "about halfway across the centerline;" and "half of his car would've been in the north bound lane, half in the south bound lane."
A determination of credibility lies within the sound discretion of the trial court, and like all questions of fact, is entitled to great weight and will not be disturbed unless clearly contrary to the evidence. State v. Vigne, 01-2940 (La.6/21/02), 820 So.2d 533, 539; State v. Vessell, 450 So.2d 938, 943 (La.1984).
*13 In this case, the trial court was faced with conflicting testimony: the self-serving testimony of defendant, as well as the testimony of Mr. George. After hearing the testimony and viewing the demeanor of the witnesses, the trial court clearly believed Mr. George's version of the events. The trial court stated, "The Court believes the testimony of Mr. Wayne George. I accept his testimony as being truthful, reliable and trustworthy." After reviewing the testimony, we find that there is no indication in the record that would support a finding that the trial court's determination is "clearly contrary to the evidence." Accordingly, we find that the trial court did not err in concluding that defendant caused the accident.

Stop at Scene of Accident
The next component of LSA-R.S. 14:100 requires a driver who is involved in or causes an accident to stop his/her vehicle "at the scene of the accident." It is undisputed that defendant did not stop at the scene of the accident. In fact, defendant testified that after Miss Morphis passed him, he proceeded to turn onto Pleasant Hill Road. After he completed the turn, he stopped and watched the accident transpire from his position on Pleasant Hill Road. Subsequently, he stated that he did not have a cellular phone, so he "went to the nearest phone to get help." After alerting the authorities, defendant testified that he went home and never returned to the scene of the accident. Therefore, we find that defendant violated LSA-R.S. 14:100 by failing to stop at the scene of the accident.

"Give His Identity"
LSA-R.S. 14:100(B)(1) provides:
(1) "To give his identity" means that the driver of any vehicle involved in any accident shall give his name, address, and the license number of his vehicle, or shall report the accident to the police.
Emphasis added.
It is undisputed that defendant called to report the accident to the police. It is equally clear that defendant did not give his name, address, or the license number of his vehicle to the dispatcher. Defendant contends that because the statute does not explain what is meant by "report the accident," his only duty under the statute was to notify the proper authorities about the accident.
The State contends that this particular element of the statute was correctly interpreted by the Fifth Circuit Court of Appeal in State v. Agee, 534 So.2d 483 (La.App. 5 Cir.1988), writ denied, 540 So.2d 326 (La.1989). In Agee, the defendant caused a collision by swerving into the lane of another vehicle. The defendant approached the other vehicle and told the injured driver that he would contact the police. The defendant left the scene of the accident in a vehicle driven by a passing motorist without identifying himself. Shortly thereafter, the defendant stated that he reported the accident to a "911" operator but did not identify himself to the operator. The defendant did not return to the scene of the accident while the scene was being investigated. According to the defendant, he returned to the scene, but everyone and the vehicles were gone. He further testified that he went to the Jefferson Parish Sheriff's Office in Gretna and was told to go to the Third District in Bridge City. When he arrived in Bridge City, he was informed that there was no record of the accident and was advised to return the following Monday.
The defendant was ultimately convicted of hit-and-run driving, in violation of LSA-R.S. 14:100 and was sentenced to 90 days in parish prison. The court of appeal affirmed *14 the conviction and sentence, stating:
The courts should construe a statute so as to accomplish the purpose for which it was enacted and to give effect to the legislative will. State in the Interest of Bruno, 388 So.2d 784 (La.1980). The most effectual way of discovering the true meaning of a law is by considering the reason and spirit of it, or the cause which induced the legislature to enact it. LSA-C.C. arts. 16, 18; Keelen v. State, Dept. of Culture, Recreation, 463 So.2d 1287 (La.1985), concurring opinion 482 So.2d 618 (La.1986).
An interpretation of the language "report the accident to the police" to mean simply notifying the police without giving one's identity, as suggested by the defendant, would allow an individual involved in an accident to leave the scene without providing any information about himself. Such would allow an individual to choose to discuss the accident and file a police report when it was convenient to him, thereby giving him the opportunity to allow evidence to escape the authorities. We find that this is not the intent of the legislation. We find the language of the statute mandates that the driver of a vehicle involved in an accident provide his identity when reporting an accident to the police.
Agee, 534 So.2d at 485-86.
We agree. LSA-R.S. 14:3 provides:
The articles of this Code cannot be extended by analogy so as to create crimes not provided for herein; however, in order to promote justice and to effect the objects of the law, all of its provisions shall be given a genuine construction, according to the fair import of their words, taken in their usual sense, in connection with the context, and with reference to the purpose of the provision.
The language of LSA-R.S. 14:100(B)(1) indicates that a person who causes an accident may either give his name, address, and vehicle license number or report the accident to the police. Applying the language as suggested by defendant would allow a person involved in or causing an accident to avoid apprehension by anonymously reporting the accident to the proper authorities. Although LSA-R.S. 14:100 does not specifically require identification by the driver reporting the accident to the police, a "genuine construction" of the statute, "in connection with the context, and with reference to the purpose of the provision" requires that the driver identify himself when reporting an accident caused by him or involving him.
In this case, the defendant did nothing to make his identity known. The only reason that defendant was ever apprehended was that the accident occurred in a rural community, where the law enforcement officials were familiar with the area and its residents. The description received by law enforcement officials was that of a black vehicle with "twin stacked antennas" on the rear window. Trooper Howard testified that he knew that the vehicle was defendant's vehicle because he had worked in LaSalle Parish for more than ten years, and he was familiar with the "local people" and their vehicles. Had the accident occurred in larger, more well-traveled area of the state or had the trooper been less familiar with the residents of the parish and their vehicles, defendant may not have ever been apprehended.
It would be absurd to conclude that a person who causes a fatal accident may escape criminal culpability by anonymously reporting the accident. Moreover, it would be unduly cumbersome to require law enforcement officials to sift through thousands of records of the Department of Motor Vehicles, searching for a vehicle *15 fitting a certain description, in an effort to locate vehicles involved in or causing accidents. Citizens who are involved in even minor "fender benders" know that they are required by law to stop and exchange identifying information, as well as insurance information. Drivers who cause fatal collisions would not have a lesser responsibility.
For these reasons, we conclude that the lower courts and the court in Agee correctly interpreted LSA-R.S. 14:100. We hold that defendant violated the statute by failing to give his identity.

Render Reasonable Aid
As stated above, LSA-R.S. 14:100 requires a driver of a vehicle involved in an accident to "render reasonable aid." In this case, the trial court concluded that defendant failed to render reasonable aid, and the court of appeal agreed, concluding that the statute does not require a driver of a vehicle to render reasonable medical aid.
It is uncontroverted that defendant made no attempt to render any type of aid, medical or otherwise, at the scene of the accident. Defendant testified that he drove to a nearby residence and alerted the authorities because he "knew the best thing that could happen was get somebody there that could help."
When questioned about the events following the collision, Mr. George testified:
Well, I got out of my truck. I tried to use my phone to call 911, but it wouldn't work because the batteries had been tor[n] up in my truck. I went to the vehicle where the girl was and checked her. She was still alive and everything. At about the same time, there was a dump truck coming, going southbound and her car had started to catch on fire so he got up there and everything and he was on the phone calling, I guess, 911 at the time. And, anyway, I was trying to get his fire extinguisher because I knew I couldn't get to mine the way my truck was laying. So, anyway, he got out of his truck with his fire extinguisher and put the car out. And, everything, and they  the girl was trapped in the car. We couldn't do nothing. The doors  everything was jammed, you know? An I proceeded to  a bunch of people started getting there about that time. And I proceeded to go get a phone to call my office to let them know what happened and everything.
Ms. Poole, the dispatcher who received the call regarding the accident testified that an unidentified male called and "said there had been a wreck on the Aimwell Road around the Pleasant Hill Baptist Church Road and that they needed an ambulance. It was bad." Ms. Poole further testified that after the initial call, she received several other calls notifying law enforcement about the accident.
We agree with the appellate court that the LSA-R.S. 14:100 does not mandate a driver involved in an accident to render medical aid and that the statute does not define the phrase "render reasonable aid." However, when a term is not defined in a statute, that term must be given its usual, prevailing meaning. Black's Law Dictionary defines "reasonable" as follows: "fair, proper, or moderate under the circumstances;" "according to reason." BLACK'S LAW DICTIONARY 1272 (7th ed.1999).
In this case, the lower courts concluded that leaving the scene of the accident, driving to a nearby residence to call the authorities, and not returning to the scene did not amount to rendering reasonable aid. Following the collision, Miss Morphis' vehicle caught fire. Mr. George, the driver of the 18-wheeler involved in the accident, who was injured himself, tried to assist Miss Morphis. The driver of another *16 truck who happened upon the scene of the accident stopped to render aid by alerting the authorities and extinguishing the fire. After reviewing the record, we conclude that leaving an accident scene where person is trapped in a burning vehicle, was not "fair, proper, or moderate under the circumstances." Therefore, we affirm the lower courts' findings that defendant failed to render reasonable aid under LSA-R.S. 14:100.

Intent
Defendant argues that the State failed to prove that he intentionally failed to comply with all of the requirements set forth in LSA-R.S. 14:100. Alternatively, defendant contends that the ambiguous nature of the term "general intent" "has made it possible and permissible for lower courts to define and make criminal acts of mere omission...."
In general intent crimes, the criminal intent necessary to sustain a conviction is established by the very doing of the proscribed acts. State v. Kennedy, 00-1554 (La.4/3/01), 803 So.2d 916, 923; State v. Holmes, 388 So.2d 722, 727 (La.1980). General criminal intent exists "when the circumstances indicate that the offender, in the ordinary course of human experience, must have adverted to the prescribed criminal consequences as reasonably certain to result from his act or failure to act." LSA-R.S. 14:10(2).
In this case, the State established that defendant caused the accident, left the scene of the accident, and failed to render reasonable aid. Thus, the criminal intent necessary to sustain a conviction for hit-and-run driving is established by the very doing of the act, i.e. hit-and-run driving. Thus, viewing the evidence presented in a light most favorable to the prosecution, we find that defendant's acts satisfy the State's burden of proving the defendant had the requisite general intent to support a conviction for hit-and-run driving.

Excessive Sentence
Defendant also argues that the seven year sentenced imposed by the trial court is excessive and violates LSA-Const. Art. I, § 20, which provides, "No law shall subject any person to ... cruel, excessive, or usual punishment."
We disagree. LSA-R.S. 14:100(C)(2) provides:
Whoever commits the crime of hit-and-run driving, when death or serious bodily injury is a direct result of the accident and when the driver knew or should have known that death or serious bodily injury has occurred, shall be fined not more than five thousand dollars or imprisoned with or without hard labor for not more than ten years, or both.
In this case, it is undisputed that Miss Morphis' death was a direct result of the accident in question It is also undisputed that defendant "knew or should have known that death or serious bodily injury ha[d] occurred." Defendant testified that after he saw the accident, he knew "it was a bad accident." Ms. Poole stated that the unidentified caller stated that the accident "was bad."
The trial judge is given a wide discretion in the imposition of sentences within the statutory limits, and the sentence imposed by him should not be set aside as excessive in the absence of a manifest abuse of his discretion. State v. Thompson, XXXX-XXXX (La.4/9/03), 842 So.2d 330; State v. Washington, 414 So.2d 313 (La.1982); State v. Abercrumbia, 412 So.2d 1027 (La.1982). A trial judge is in the best position to consider the aggravating and mitigating circumstances of a particular case, and, therefore, is given broad discretion in sentencing. State v. Cook, 95-2785 (La.5/31/96), 674 So.2d 957. On review, an appellate court does not determine *17 whether another sentence may have been more appropriate, but whether the trial court abused its discretion. Id.
Our review of the trial court's reasons in imposing defendant's sentence reflects that the sentencing court particularly took into consideration defendant's previous arrests for driving while intoxicated, reckless driving, and driving at an excessive speed. The trial court specifically mentioned defendant's "history of being a dangerous driver...." The trial court also stated that defendant has "no concern for the safety of other people" and expressed his concern about the risk of defendant causing harm to others. The trial court went on to express that "any lesser sentence will deprecate the seriousness of this crime."
The trial court also considered the pre-sentencing investigation and recommendation prepared by the state Division of Probation and Parole. When asked by the probation and parole officer to make a statement regarding the accident, defendant expressed no remorse, stating:
I just saw an accident and I reported it. I would just like to get on with my life and raise my children. All I saw was an accident, I called the proper authorities and reported it. I had just got off work and was trying to get home. I have nothing to hide.
After reviewing the offense report, collecting statements from defendant, Mr. Jim Morphis, the victim's father, and Joshua Pritchard, and reviewing defendant's prior record, the probation and parole officer opposed any lenient sentence. He stated:
I feel the subject should be sentenced to the maximum penalty allowed by law. I base my decision on the facts surrounding the subject's past criminal history and his attitude concerning himself being found guilty of the instant offense. The subject does not feel he has done anything wrong and I detect no remorse in his actions. I also base my decision on the fact the subject has admitted an extensive use of marijuana, methamphetamines, and cocaine. These are dangerous substances to use for any extended amount of time and I feel the subject is in complete denial of his problem. It is the opinion of Probation & Parole that a suspended sentence or any leniency would greatly minimize the severity of the crime and do injustice to the victim and her family.
Additionally, testimony was heard regarding the substantial impact of the accident on the Morphis family. Mr. Morphis testified at the sentencing hearing regarding the devastating effect of the death of his only child.
After reviewing the record, we do not find the sentencing court abused its discretion. Therefore, we affirm the seven year sentence at hard labor imposed by the trial court.

CONCLUSION
For the reasons stated herein, we hold that the evidence, viewed in the light most favorable to the prosecution, supports defendant's conviction, and we affirm defendant's conviction and sentence.
AFFIRMED.
CALOGERO, C.J., and Weimer, J., dissent and assign reasons.
VICTORY, J., concurs in the result and assigns reasons.
KNOLL, J., additionally concurs with reasons.
CALOGERO, Chief Justice, dissenting.
I respectfully dissent from the majority's holding that La.Rev.Stat. 14:100(B)(1) requires the driver involved in an accident not only to report the accident to the *18 police, but also to insist the police take note of his name, address, and vehicle's license number, even if the police do not ask him for that information. I also dissent from the majority's apparent holding that, to satisfy the element of "reasonable aid" required of a driver involved in an accident, the driver must remain at the scene, even if he must stand there helplessly when the prudent and more beneficial action would be to leave the scene of the accident to summon more quickly the assistance of medical and law enforcement personnel. Instead of refashioning the statute, as the majority does, to fit the evidence, I would apply the language of the statute as written by the legislature and find that the evidence introduced by the state, even when viewed in a light favorable to the prosecution, is insufficient under the standard articulated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), to support a finding that the state proved beyond a reasonable doubt every element of the charged hit-and-run driving offense.
To prove a violation of La.Rev.Stat. 14:100, the state must show that the defendant caused or was involved in an accident, and that he failed to stop his vehicle at the scene of the accident, failed, to give his identity, and failed to render reasonable aid. The statute also expressly defines the element of "to give his identity" as requiring that the driver of any vehicle involved in an accident "shall give his name, address, and the license number of his vehicle, or shall report the accident to the police." La.Rev.Stat. 14:100(B)(1)(emphasis supplied). Therefore, to support a conviction for a violation of La.Rev.Stat. 14:100 under the facts of this case, the state must necessarily prove that the defendant failed to report the accident to the police. In my view, because the defendant did in fact immediately report the accident to the LaSalle Parish Sheriff's Office, the evidence introduced by the state is not sufficient to establish this element of the offense beyond a reasonable a doubt.
Here, the defendant testified that, immediately after witnessing the accident, he "went to the nearest phone to get help." Specifically, he testified that he traveled down Pleasant Hill Road, passed a house set off from the highway with no cars in the driveway, and pulled into the second residence on the right, because it was the first which displayed any sign that someone was home. He knocked on the door and asked if he could use the phone to call the sheriff's department. The home's occupant verified that the defendant stopped at her residence and asked to use the phone to notify the police of the accident. She further testified that the defendant appeared to be "shaken up" and "scared looking." Additionally, the dispatcher with the LaSalle Parish Sheriff's Office testified that she received a call at 3:18 p.m. from a man reporting the wreck. The man told the location of the accident and urgently insisted that the dispatcher send an ambulance. Under these circumstances, the defendant complied with the statute prescribing that he report the accident to police, and thus he did not fail "to give his identity" as defined by the statute itself.
The majority errs in adopting the reasoning of State v. Agee, 534 So.2d 483, 485-86 (La.App. 5th Cir.1988), writ denied, 540 So.2d 326 (La.1989), a case in which the appellate court effectively read out of La.Rev.Stat. 14:100(B)(1) the legislature's specifically chosen disjunctive language: the driver of any vehicle involved in an accident "shall give his name, address, and the license number of his vehicle, or shall report the accident to the police." The Agee court held the statute mandates that the driver provide his identity when reporting an accident to the police. The Agee court reasoned that such an interpretation *19 of the statute was necessary to further what it perceived as the sole legislative interest of the statute, that is, preserving as much potential evidence at the scene of the accident as possible. Agee, 534 So.2d at 485-86.[1] Accepting that such is the laudable intent of the statute, I do not see the need to give a construction to the statute other than apply the statute as it is written. In making the language of La.Rev.Stat. 14:100(B)(1) disjunctive, rather than conjunctive, the legislature surely and reasonably recognized that the police are occasionally not immediately or directly involved in the investigation of many traffic accidents, whether the accident be a minor one or when the police are otherwise engaged, but the drivers involved must nonetheless provide to the other drivers or aggrieved persons their name, address, and the license number of their vehicle. On the other hand, implicit in the statutory alternative method of giving one's identity, that is, by reporting the accident to the police, is the reasonable expectation that the police will certainly demand any information they believe is necessary and warranted by the situation.
Nor do I see how this defendant's actions thwarted the efforts of law enforcement personnel to secure evidence. Indeed, there is no indication in the record that this defendant ever attempted to conceal his identity or refused to cooperate with law enforcement personnel. While the majority makes much of the fact that the defendant did not provide the Sheriff's Office dispatcher with his name, it is just as true from this record that the dispatcher did not ask the defendant for his name. Additionally, even though the defendant was identified through a description of his vehicle and contacted by the Sheriff's Office within a couple of hours of the accident, law enforcement personnel, rather than the defendant, made the decision not to question him until the following morning, thereby foregoing the opportunity to gather in a timely manner other evidence, such as a blood sample, and perhaps compromising the investigation.
More troubling than the unnecessary construction given to the legislature's definition of "to give his identity," however, is the majority's interpretation of the statute's requirement that a driver involved in an accident "render reasonable aid." As the majority concedes, this element of the offense has not been defined by the legislature. Instead, the majority seems to require that the driver must "attempt to render any type of aid, medical or otherwise, at the scene of the accident." Maj. Op., p. 15 (emphasis supplied). The majority seems to fault the defendant for leaving the scene to summon assistance when the testimony of the truck driver reveals that he "couldn't do nothing [sic]" because the doors of the decedent's vehicle were jammed and the vehicle was engulfed in flames. The truck driver could not call for help himself because his cell phone batteries were damaged. The evidence in the record shows that the defendant's call for assistance  from what he believed to be the nearest available phone  was indeed the first call received by the Sheriff's Office. Under these circumstances, the defendant, who had no medical training, provided the best assistance he was capable of, and certainly such assistance  summoning *20 professional help as quickly possible  was a reasonable and appropriate course of action for this defendant to take.
Moreover, the record establishes that calling for the assistance of emergency response personnel as soon as possible was the proper action under these circumstances. While it is true that the driver of the truck tried to get the victim out of the vehicle, he also tried to call for help but could not do so. The driver of the dump truck that came upon the scene first called for help on his cell phone before using his fire extinguisher. Thus, the people who viewed the scene recognized that professional help was necessary. It has not been shown that the defendant had a cell phone but did not use it, or that he had a fire extinguisher but did not use it. Furthermore, a doctor testified at trial that, even if the defendant had remained on the scene, he could not have assisted the woman. Consequently, there is no showing by the state in this case that the defendant could have reasonably done anything other than summon professional help for this unfortunate woman trapped in her burning vehicle. The majority, instead, appears to fault the defendant for not "returning to the scene" of the accident after summoning help. Yet, the record is devoid of any evidence to show that the defendant could have done anything beneficial at the scene of the accident that would have aided this victim.
In my view, I do not believe the legislature intended that a driver must remain at the scene of a terrible, but unreported, accident and stand there helplessly watching a fire engulf the vehicle, when the best chance of survival for the victim was to not wait on the scene, but rather to find immediately the nearest telephone and summon emergency officials. Accordingly, I believe the evidence was insufficient to prove beyond a reasonable doubt that this defendant failed to report the accident to the police and failed to render reasonable aid under the circumstances.
VICTORY, J., concurring in the result.
Certainly this statute could benefit by some clarification by the Legislature, but I interpret the three requirements of the statute to be done at the scene of the accident, i.e. stop there, give identity there, and render reasonable aid there. Further, a defendant should not be able to satisfy both the requirements of giving his identity and rendering reasonable aid by the single act of merely telling the police over the telephone that an accident has occurred.
KNOLL, Justice, concurring with additional reasons.
I additionally concur with the majority opinion in order to emphasize a fundamental tenet of statutory construction, namely that statutory interpretation cannot result in absurd consequences and must give way to a reasonable result.
In construing La.Rev.Stat. 14:100 B(1), the majority briefly touches on the absurdity of concluding that a driver gives his identity, for purposes of La.Rev.Stat. 14:100, by anonymously reporting the accident to the police. As a general rule, when the literal construction of a statute produces absurd or unreasonable results, the letter must give way to the spirit of the law and the statute construed so as to produce a reasonable result. State v. Bennett, 610 So.2d 120, 122 (La.1992). The function of the court is to interpret the laws so as to give them the meaning which the lawmakers obviously intended them to have and not to construe them so as to give them absurd or ridiculous meanings. Savoie v. Rubin, 01-3275, p. 4 (La.6/21/02), 820 So.2d 486, 488; Webb v. Parish Council *21 Webb v. Parish Council of East Baton Rouge, 217 La. 926, 47 So.2d 718, 720 (1950).
Although criminal statutes are subject to strict construction under the rule of lenity, State v. Carr, 99-2209, p. 4 (La.5/26/00), 761 So.2d 1271, 1274, the rule is not to be applied with "such unreasonable technicality as to defeat the purpose of all rules of statutory construction, which purpose is to ascertain and enforce the true meaning and intent of the statute." State v. Everett, 00-2998, p. 12 (La.5/14/02), 816 So.2d 1272, 1279, reh'g denied, 6/21/02, quoting State v. Broussard, 213 La. 338, 342, 34 So.2d 883, 884 (La.1948). A criminal statute, like all other statutes, should be so interpreted as to be in harmony with, preserve, and effectuate the manifest intent of the legislature, and an interpretation should be avoided which would operate to defeat the purpose and object of the statute. State v. Brown, 03-2788, p. 6 (La.7/6/04), 879 So.2d 1276, 1280, reh'g denied 9/3/04; Broussard, 34 So.2d at 884.
As the majority so aptly points out, it would be an absurd result to allow a person who causes a fatal accident to escape criminal culpability by anonymously reporting the accident. The court's function is to interpret the laws so as to give them the meaning which the legislature obviously intended them to have, and we should avoid an interpretation which would operate to defeat the purpose and object of the statute.
WEIMER, J., dissenting.
I write to amplify the dissenting opinion of Justice Calogero.
I respectfully dissent from the majority opinion rejecting the defendant's argument that the state failed to prove at least one of the requisite elements of the charged offense, LSA-R.S. 14:100, hit-and-run driving.[1]
The statute requires the state to prove that a driver who is involved in or causes an accident failed to do all of the following: 1) stop his vehicle at the scene, 2) give his identity, and 3) render reasonable aid. LSA-R.S. 14:100(A). The statute defines "to give his identity" in a unique fashion. The statute states that the driver shall "give his identity" by either providing his name, address, and the license number of his vehicle or reporting the accident to the police. LSA-R.S. 14:100(B)(1).
It is undisputed the defendant did in fact report the accident to the police and, thus, did not fail "to give his identity" as defined in the statute. Justice Calogero's dissent specifies the facts. In summary, the defendant went to the nearest available residence with a telephone and called the police. In light of these facts, the defendant provided ample and indisputable evidence that he "report[ed] the accident to police" and thus did not fail to "give his identity" as defined by LSA-R.S. 14:100.
Simply stated, based on the clear and explicit statutory language and the disjunctive "or," one can "give his identity" by reporting the accident to the police. There is no requirement that one also give his name. To require such would entail re-writing the statute by replacing the disjunctive " *22 or" with the conjunctive "and."[2]
Despite the above, the majority hinges its holding on State v. Agee, 534 So.2d 483, 485-86 (La.App. 5 Cir.1988), a case in which the court effectively read the legislature's carefully chosen disjunctive language out of LSA-R.S. 14:100(B)(1). The Agee court apparently viewed such a reading as necessary to further what it perceived as the sole legislative intent of the statute, specifically, preserving as much potential evidence at the scene of the accident as possible. Id. However, in making the language of LSA-R.S. 14:100(B)(1)[3] disjunctive, rather than conjunctive, the legislature apparently recognized that a person involved in or causing an accident may provide any injured parties the best chance of survival, not by waiting at the scene of an unreported accident, but rather by immediately finding the nearest telephone and summoning emergency officials. Accordingly, the plain language of the statute absolves individuals of criminal liability, such as the defendant, who "report the accident to the police" rather than remain helplessly at the scene of the accident. The portion of Agee relied upon by the majority directly and unnecessarily conflicts with the plain language of LSA-R.S. 14:100(B)(1).[4]
The majority acknowledges "LSA-R.S. 14:100 does not specifically require identification by the driver reporting the accident to the police." However, under the guise of "genuine construction," the majority imposes such a requirement. With respect, the majority of this court decides what purpose the statute is to serve and then alters language of the statute that does not achieve that purpose. That approach is not our role. Far too many times we have stated: "We begin, `as we must, with the language of the statute.'" State v. Patin, 02-1126, p. 3 (La.4/9/03), 842 So.2d 322, 324, quoting Bailey v. United States, 516 U.S. 137, 144, 116 S.Ct. 501, 506, 133 L.Ed.2d 472 (1995). "When the wording of a Section is clear and free of ambiguity, the letter of it shall not be disregarded under the pretext of pursuing its spirit." LSA-R.S. 1:4. It is only where the words lead to some absurdity that we depart from applying the plain language. State v. Bedord, 01-2298, p. 3 (La.12803), 838 So.2d 758, 760. The statute imposes a duty. Although I do not deny the majority properly recites a purpose of the statute is to require those involved in accidents to give their names, addresses, and license numbers, another purpose  prompt reporting of the accident to the police  is achieved with the disjunctive "or." The majority effectively modifies the language of the statute so as to achieve one purpose.
It is elementary that criminal and penal laws are to be strictly construed. LSA-R.S. 14:3.[5] The majority's holding is contrary *23 to the rule of lenity that any ambiguity in the substantive provisions of a statute as written is resolved in favor of the accused and against the state. State v. Carr, 99-2209, p. 4 (La.5/26/00), 761 So.2d 1271, 1274. The interpretation given to LSA-R.S. 14:100 by the majority violates this principle of statutory construction and unjustly convicts the defendant.
In this matter, the dispatcher called by the defendant could not recall if the defendant gave his name. The defendant admitted he could not recall if he gave his name. Nevertheless, upon being called by the police after the accident, he offered to turn himself in, but was told to report the next morning. He complied with this directive by reporting to the police station.
The fact of the matter is defendant, lacking a cell phone and medical training, left the accident site to call the police for help. A doctor testified that even if defendant had remained at the scene, he would have been helpless and unable to save the victim's life. The statute, as written, avoids the dilemma of the driver who decides whether to stay at the scene, helpless, or to leave to seek aid. Ultimately it is the legislature which writes the law. If the statute, as written, does not achieve an intended goal, the legislature can change the law.
This matter involved a terrible tragedy. I do not deny that one who is involved in an accident has a moral obligation to remain at the scene or at least return to the scene of an accident to render aid. A failure to return to the scene of any accident is morally reprehensible. However, the law does not punish each moral lapse and it is the legislature's role to statutorily define what actions or inactions result in criminal responsibility. Courts cannot enlarge this criminal responsibility by jurisprudentially altering the statute to achieve a result in a difficult case such as this one. Based on the statutory language, the defendant did not commit the crime of hit-and-run driving, and he was not charged with any other crime, such as negligent homicide or vehicular homicide.
Based on the language of the statute as written, this court should find that the state failed to offer sufficient evidence in support of the defendant's conviction and, accordingly, reverse his conviction and sentence.
NOTES
[1] In some portions of the record, including defendant's signature, his name is spelled "Allan Scott Williams."
[2] At the time of the accident in question, LaSalle Parish did not have an operating 9-1-1 system.
[3] The results of blood alcohol tests administered to Miss Morphis and Mr. George were negative. Defendant's blood alcohol level was never tested. Trooper Howard testified that defendant was not tested because the supervising officers "felt like any testing would have been compromised due to the time."
[1] The Agee case is also distinguishable on its facts, because there was conflicting testimony as to whether the defendant in that case had actually reported the accident to the police. This conflicting testimony allowed the trial court to reject the defendant's hypothesis of innocence, i.e., that he was the one who had made the telephone call reporting the accident to the police. The Agee court, therefore, did not need to construe the statute as it did in order to affirm the conviction on sufficiency grounds.
[1] LSA-R.S. 14:100 provides, in pertinent part:

A. Hit and run driving is the intentional failure of the driver of a vehicle involved in or causing any accident, to stop such vehicle at the scene of the accident, to give his identity, and to render reasonable aid.
B. For the purpose of this Section:
(1) "To give his identity", means that the driver of any vehicle involved in any accident shall give his name, address, and the license number of his vehicle, or shall report the accident to the police. [Emphasis supplied.]
[2] With respect to interpreting the provisions of the Revised Statutes, LSA-R.S. 1:9 instructs:

Unless it is otherwise clearly indicated by the context, whenever the term "or" is used in the Revised Statutes, it is used in the disjunctive and does not mean "and/or."
[3] Quoted at Footnote 1.
[4] The trier of fact in Agee could reasonably have determined that defendant failed to report the accident to police, thus rendering unnecessary the appellate court's tenuous holding. To the extent Agee is in conflict with this dissent, the case should be overruled.
[5] LSA-R.S. 14:3 provides:

The articles of this Code cannot be extended by analogy so as to create crimes not provided for herein; however, in order to promote justice and to effect the objects of the law, all of its provisions shall be given a genuine construction, according to the fair import of their words, taken in their usual sense, in connection with the context, and with reference to the purpose of the provision.