Judgment rendered April 5, 2023.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 54,973-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                          Appellee

versus

QUANTAVIOUS JAMAL BOGAN                      Appellant

* * * * *

Appealed from the
Forty-Second Judicial District Court for the
Parish of DeSoto, Louisiana
Trial Court No. 21-CR-31630

Honorable Amy Burford McCartney, Judge

* * * * *

LOUISIANA APPELLATE PROJECT            Counsel for Appellant
By:  Paula C. Marx

CHARLES B. ADAMS                       Counsel for Appellee
District Attorney

LISA D. LOBRANO
Assistant District Attorney

* * * * *

Before COX, ROBINSON, and ELLENDER, JJ.

**ELLENDER, J.**

Quantavious Jamal Bogan appeals his sentence of 10 years at hard labor following his guilty plea to aggravated battery, La. R.S. 14:34. For the reasons expressed, we affirm.

## FACTS

Bogan, Macy Losey, and 17-year-old CJ were all students at North DeSoto High School. Bogan and Losey met while working together at Sonic and began a relationship described by Bogan as "friends with benefits."

On the evening of April 14, 2021, Bogan and Losey were riding in Losey's car when she received a message via social media from CJ.[1] In Losey's version of events, she began a conversation with CJ and then showed some of these messages to Bogan. Thereafter, Bogan used her phone to continue messaging CJ. While pretending to be Losey, Bogan convinced CJ to meet up with who he believed was just Losey. Prior to the arranged meeting, Bogan informed Losey of his intention to rob the unsuspecting CJ of his phone because CJ had previously accused Bogan of stealing a phone at school. Bogan's plan was to arm himself with a handgun, hide in the trunk of Losey's car, then jump out and rob CJ.

After informing Losey of his plan, Bogan climbed into the trunk and the two proceeded to CJ's home. Once Losey picked CJ up, she began driving to an unknown destination while Bogan remained concealed in the trunk. At some point during this journey, Losey faked an asthma attack, pulled to the side of the road, and stated she needed to get her inhaler out of

---

[1] The details of what occurred this night were primarily set forth in the presentence investigation ("PSI") ordered by the trial court. Bogan, Losey, and CJ were all interviewed, with each giving varying details of what happened.

the trunk. After coming to a stop, Losey and CJ made their way around to the trunk where a waiting Bogan jumped out brandishing a handgun. Bogan and CJ began an altercation during which Bogan pointed the handgun at CJ, took his phone, and ultimately hit CJ in the head with the gun. CJ was then able to escape while Bogan's attention was diverted. After the scuffle, Bogan and Losey got back in Losey's car and drove away.

CJ's version of what occurred was substantially similar to Losey's. CJ said he was contacted and picked up by Losey on the night of the incident. He recalled Losey stopped the car at some point during their journey and he was "suspiciously" led to the trunk of the car by Losey. Bogan emerged, pointed a gun at him, and stole his phone before hitting him in the head with the gun. CJ also said he and Bogan had engaged in a prior disagreement at school regarding a "female."

Bogan gave a different account of the events. He recalled Losey showed him the messages she had received from CJ and then informed him she intended to go pick CJ up. Bogan claimed he asked Losey to drop him off before doing so, but Losey refused and insisted he hide out in the trunk of her car instead. After picking CJ up, Bogan stated he dozed off while Losey and CJ began to drive to an unknown destination. According to Bogan, Losey eventually pulled over and she and CJ made their way around to the rear of the car and opened the trunk. Bogan claimed that because he and CJ were both startled, an altercation ensued between them. Bogan recalled punching CJ in the head with his fist before CJ was eventually able to flee on foot. At this point, Bogan said he and Losey got back in her car and drove away.

Later that night, after the incident, Bogan and Losey were still riding in Losey's car when the duo was pulled over by two DeSoto Parish Sheriff's Deputies. Losey claimed that once Bogan "saw the blue lights" he gave her the handgun and instructed her to "take the charges" for him. Bogan, on the other hand, claimed Losey had the gun in her possession the entire night, having previously stolen it from her grandfather, and recalled seeing Losey with it prior to picking up CJ. A search was conducted of their persons which revealed a handgun in Losey's possession. The deputies also conducted a search of Losey's car which led to the discovery of two grams of marijuana. Bogan and Losey were both subsequently arrested.

**GUILTY PLEA**

Bogan was charged by bill of information with one count of armed robbery, La. R.S. 14:64, and one count of aggravated battery, La. R.S. 14:34. He pled guilty on February 28, 2022, to aggravated battery upon the state's agreement to dismiss the armed robbery charge. During the *Boykin* examination, at which time Bogan indicated he understood his rights and was aware of the repercussions of his plea, the following exchange took place:

> The Court: Sir, would you provide the factual basis.
>
> Mr. Blewer: Yes, ma'am. On or about April 14, 2021, in DeSoto Parish, the defendant, Mr. Bogan, committed an aggravated battery, specifically upon the person with the initials CJ by striking him in the head with a firearm without the consent to do so.
>
> The Court: So these facts are basically accurate?
>
> Defendant Bogan: Yes, ma'am.

The Court: Okay. And, Ms. Waltman, is it your opinion from your review of discovery that all of the elements that constitute the crime of aggravated battery are present?

Ms. Waltman: Yes, your Honor.

. . .

The Court: Okay. All right. And after advising [Bogan], did he state that he wished to enter a plea of guilty of his own free will and with the knowledge of the consequences of that plea?

Ms. Waltman: Uh, yes, your Honor.

…

The Court: Okay. And, Mr. Bogan, after acknowledging that you understand your constitutional right, and you understand that you give up these rights by entering a plea of guilty, do you still wish to enter a plea of guilty to the charge of aggravated battery?

Defendant Bogan: Yes, ma'am.

The Court: Okay. I find that you knowingly and intelligently and consciously waived your rights and your guilty plea is accepted.

After accepting the guilty plea, the trial court ordered a PSI be prepared prior to sentencing. As referenced, the PSI included divergent statements from Bogan, Losey, and CJ, although Losey and CJ's versions were substantially similar. In recommending the maximum sentence, the report stated Bogan appeared to have no remorse for his involvement in the offense, he denied all allegations, and placed blame for the offense entirely on Losey.

## SENTENCING

Bogan appeared for sentencing on May 12, 2022. At the beginning of the hearing, the trial court articulated several factors it considered in making its decision. Some of these included: (1) Bogan's age of 18 years old at the

4

time of the offense, (2) his original charges of both armed robbery and aggravated battery, (3) his positive relationships with his parents and sibling, (4) his expecting a child, (5) his employment history, (6) his limited drug history, and (7) his lack of criminal history. Bogan was then allowed to make a statement. Bogan explained to the trial court he did not show remorse during the PSI interview because this was his first time being arrested, and he did not understand how he was supposed to answer the questions. He then apologized for what he had done.

Afterward, Bogan's attorney motioned to withdraw the guilty plea stating Bogan had indicated he did not understand the plea. The trial court responded that Bogan had admitted his guilt when he entered the plea and he did not object to the factual summary set forth in the plea. Bogan then asserted the only reason he admitted to the offense was because he knew he was "facing thirty,"[2] and he was unsure if he could "win." Bogan also claimed he was tired, frustrated, and in a rush to "get [the proceedings against him] over with." Bogan stated he was not admitting to any wrong, but rather putting himself in a position to not face 30 years. Bogan argued he used only his fists to hit CJ, and not a firearm, and he felt he could not speak up at the guilty plea hearing for fear of messing up the plea agreement. The trial court reminded Bogan he accepted the facts read at the guilty plea hearing as true, he agreed he hit CJ with a firearm, and he was found to fully understand what he was doing following the *Boykin* examination. The trial court went on to state it was under the impression Bogan did not feel as

_____

[2] There is no indication in the record Bogan was ever told the maximum sentence he could receive for armed robbery was only 30 years, as opposed to the statutory maximum of 99 years.

5

though he had done anything wrong and this impression was corroborated by his statement in the PSI.

Bogan's motion to withdraw his guilty plea was denied[3] and Bogan was sentenced to serve the maximum provided for aggravated battery, 10 years at hard labor. Bogan subsequently filed a motion to reconsider, which was summarily denied by the trial court. This appeal followed.

## DISCUSSION

In his assignments of error, Bogan asserts the trial court erred by failing to provide an adequate factual basis for imposing the maximum sentence for aggravated battery, which he argues is constitutionally excessive. In support of this argument, Bogan submits he was only 18 years old at the time of the offense and mere days away from his high school graduation. Bogan points to his lack of criminal history and further asserts the trial court's finding he took no responsibility for his commission of the offense is not supported in the record. Bogan claims he was in fact remorseful for what happened and has accepted responsibility for the crime by pleading guilty to aggravated battery and accepting the facts as true.[4] He states he also apologized to the victim who, he adds, was not seriously injured during the altercation.

In reviewing a sentence for excessiveness, an appellate court uses a two-step process. First, the record must reflect the trial court took the

---

[3] Although not a part of Bogan's assignments of error, we find it worth noting a thorough review of the *Boykin* transcript reveals Bogan was fully informed of his rights, and knowingly and intelligently entered his plea freely and voluntarily. The trial court properly denied the motion and reiterated Bogan had been fully informed of the ramifications of his plea and had accepted all facts as true by pleading guilty.

[4] Bogan did not accept all facts as true. At sentencing he insisted he did not hit CJ with a gun, although at his guilty plea he agreed that he had done so.

criteria set forth in La. C. Cr. P. art. 894.1 into account. The goal of Art. 894.1 is to articulate an adequate factual basis for the sentence, not rigid or mechanical compliance with its provisions. *State v. Lanclos*, 419 So. 2d 475 (La. 1982). The trial court is not required to list every aggravating or mitigating circumstance, so long as it adequately considered them in particularizing the sentence to the defendant. *State v. Smith*, 433 So. 2d 688 (La. 1983). The important elements which should be considered are the defendant's personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of the offenses, and the likelihood of rehabilitation. *State v. Jones*, 398 So. 2d 1049 (La. 1981); *State v. Trotter*, 54,496 (La. App. 2 Cir. 6/29/22), 342 So. 3d 1116.

Second is a determination of whether the sentence is constitutionally excessive. A sentence violates La. Const. art. I, § 20, if it is grossly out of proportion to the severity of the crime or nothing more than a purposeless and needless infliction of pain and suffering. *State v. Dorthey*, 623 So. 2d 1276 (La. 1993); *State v. Trotter*, *supra*. A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. *State v. Weaver*, 01-0467 (La. 1/15/02), 805 So. 2d 166.

The trial court has wide discretion in the imposition of sentences within the statutory limits and such sentences should not be set aside as excessive in the absence of a manifest abuse of that discretion. *State v. Williams*, 03-3514 (La. 12/13/04), 893 So. 2d 7; *State v. Trotter*, *supra*. A trial judge is the in the best position to consider the aggravating and mitigating circumstances of a particular case, and, therefore, is given broad

7

discretion in sentencing. *State v. Trotter*, *supra*; *State v. Bell*, 53,712 (La. App. 2 Cir. 1/13/21), 310 So. 3d 307. On review, an appellate court does not determine whether another sentence may have been more appropriate, but whether the trial court abused its discretion. *State v. Trotter*, *supra*; *State v. Bell*, *supra*.

As a general rule, maximum or near maximum sentences are reserved for the worst offenders and the worst offenses. *State v. Cozzetto*, 07-2031 (La. 2/15/08), 974 So. 2d 665*; State v. Gibson*, 54,400 (La. App. 2 Cir. 5/25/22), 338 So. 3d 1260, *writ denied*, 22-00978 (La. 3/7/23), __ So. 3d __. A defendant's receipt of a substantial advantage via a plea bargain is also an appropriate consideration in sentencing. Accordingly, where the defendant has pled guilty to an offense which does not adequately describe his conduct or has received a significant reduction in sentencing exposure through a plea bargain, the trial court has great discretion in imposing even the maximum sentence for the pled offense. *State v. Cozzetto, supra*; *State v. Gibson*, *supra*.

Aggravated battery is defined as a battery committed with a dangerous weapon. La. R.S. 14:34 (A). Whoever commits an aggravated battery shall be fined not more than five thousand dollars, imprisoned with or without hard labor for more than ten years, or both. La. R.S. 14:34 (B).

Here, the trial court articulated numerous factors it considered prior to imposing sentence. First, the trial court acknowledged Bogan was only 18 years old at the time of the offense. Next, the trial court stated Bogan was originally charged with both armed robbery and aggravated battery, but as a result of the plea agreement, he was allowed to plead guilty to only

8

aggravated battery. As previously noted, the trial court then articulated several aspects of Bogan's history and present circumstances, including: his age, his positive relationships with his parents and brother, his expecting a child, his impending high school graduation, his employment history and new job, his limited drug history, and his lack of criminal history.

Additionally, prior to imposing Bogan's sentence, the trial court indicated it had considered the sentencing guidelines found in Art. 894.1. Specifically, the trial court noted Art. 894.1(A) and stated it had determined there was a risk that during a period of suspended sentence or probation, Bogan would commit another crime. The trial court also stated a lesser sentence would deprecate the seriousness of Bogan's crime. As to the factors found in Art. 894.1(B), the trial court noted Bogan used actual violence and a firearm in commission of the offense, and he was also an active participant in the planning and commission of the offense. The trial court stressed the substantial benefit Bogan was receiving by having the charge of armed robbery dismissed. Further, the trial court noted Bogan's age, family ties, marital status, health, employment history, criminal history, seriousness of the offense, and the likelihood of rehabilitation. All of these factors are set forth by the Louisiana Supreme Court in *Jones* as important elements to be considered when reviewing a sentence for excessiveness. We find the trial court here properly and thoroughly took the criteria set forth in Art. 894.1 into account while sentencing Bogan.

As to the second consideration (whether the sentence was constitutionally excessive), the facts of this case more than justify a 10-year hard labor sentence. Bogan armed himself with a handgun and hid in the

9

trunk of a car in order to rob a minor of his cell phone. As part of this offense, Bogan also pointed a handgun at the victim and ultimately struck him in the head with the gun. Although dismissed as part of the plea agreement, Bogan's conduct clearly supported a conviction for armed robbery, which would have carried a maximum sentence of 99 years at hard labor without the benefit of probation, parole, or suspension of sentence. The trial court here was entitled to consider this substantial benefit Bogan received as a result of the plea agreement. *See*, *State v. Guzman*, 99-1528 (La. 5/16/00), 769 So. 2d 1158; *State v. Yetman*, 54,883 (La. App. 2 Cir. 1/11/23), __ So. 3d __. Bogan's crime is precisely the type of conduct severe enough to warrant a 10-year sentence. This punishment is not constitutionally excessive, does not shock the sense of justice, nor is it a needless infliction of pain and suffering.

Bogan's assignments of error lack merit.

## CONCLUSION

Finally, we have reviewed the entire record and find nothing we consider to be error patent. La. C. Cr. P. art. 920 (2).

For the reasons expressed, we find adequate compliance with the sentencing guidelines and no abuse of the court's sentencing discretion in imposing this 10-year maximum sentence. We affirm the conviction and sentence.

**AFFIRMED.**

10