Judgment rendered June 28, 2023.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 55,099-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                          Appellee

versus

LORENZO ZACHERY ZEIGLER                     Appellant

* * * * *

Appealed from the
Fourth Judicial District Court for the
Parish of Ouachita, Louisiana
Trial Court No. 16-F0917

Honorable Larry D. Jefferson, Judge

* * * * *

LOUISIANA APPELLATE PROJECT          Counsel for Appellant
By: Edward K. Bauman

ROBERT S. TEW                        Counsel for Appellee
District Attorney

ROBERT N. ANDERSON
RICKY D. SMITH
Assistant District Attorneys

* * * * *

Before PITMAN, STEPHENS, and THOMPSON, JJ.

**PITMAN, C. J.**

Defendant Lorenzo Zachery Zeigler appeals his sentence. For the following reasons, we affirm.

## FACTS

This is the second time this matter has been before this court. In *State v. Zeigler*, 54,217 (La. App. 2 Cir. 3/9/22), 334 So. 3d 1081 ("*Zeigler I*"), this court provided the following background:

> In April 2016, Zeigler, his sister Katherine Zeigler ("Katherine"), and Katherine's fiancé, Mario Wiley ("Wiley"), resided in a family home left to Zeigler and Katherine by their mother upon her death. Other residents of the home included Katherine's two young children and Quenterius Foster ("Foster"), a nephew of Zeigler and Katherine.
>
> On the evening of April 10, 2016, Zeigler, age 54, shot and killed Wiley, age 26, in the backyard of the family home. Earlier that day, Zeigler left the residence in his vehicle. An unspecified time later, Katherine, her children, Foster, and Katherine's friend, Kaci Maza ("Maza"), left and went to the store. Wiley remained in the home with Chris Jarrell ("Jarrell"), who was giving him a tattoo when Zeigler returned home. It is undisputed that upon his return to the house, Zeigler ordered Wiley and Jarrell to leave the premises because of the odor from the tattoo process. A verbal exchange ensued between Zeigler and Wiley, and Wiley escalated it to a physical altercation. Wiley struck Zeigler multiple times in the face and head causing him to bleed heavily onto his shirt.
>
> While the beating was ongoing, Katherine, her two young children, Foster, and Maza returned from the store. Katherine entered the residence to find Zeigler on the closet floor with his head slumped over, while Wiley repeatedly punched him. Katherine and Foster intervened, stopping the physical assault. Katherine took Wiley outside, and Foster helped Zeigler to his feet. Minutes later, Zeigler came outside armed with a shotgun and aimed it at Wiley. Katherine and Foster pleaded with Zeigler to put the shotgun down, and he lowered the weapon. Wiley unexpectedly pushed Katherine to the ground, whereupon Zeigler shot Wiley in the chest. Wiley fell to the ground, and Zeigler went back into the house, while Katherine called the police and attempted to render aid. When law enforcement officers arrived, Zeigler was taken into custody and later arrested.

At trial, the State called a total of 6 witnesses, including Katherine, Foster, and Maza. The autopsy report was introduced into evidence, and it showed that Wiley's cause of death was a single gunshot wound to the chest. The abrasions and contusions observed on his hands and wrists were consistent with a physical altercation. The toxicology report showed that Wiley tested positive for amphetamines, methamphetamine, cocaine, and marijuana. Katherine testified that Wiley had been prescribed Seroquel because he was bipolar, but had not taken the (*sic*) it for 9 months.

At the conclusion of the trial, Zeigler was found guilty of manslaughter.

The sentencing hearing was held on November 7, 2019. The trial court stated that it reviewed the presentence investigation report. Defense counsel noted that the report incorrectly stated that Defendant was born in 1966 when he was actually born in 1961 and that it did not include information about Defendant's health. The trial court discussed Defendant's family, education, work and criminal histories and that he is currently disabled. It stated that Defendant had no felony convictions but did have misdemeanor convictions. It detailed the facts of the case, noted that the victim was in his 30s and stated that Defendant, at his age, "should have had better control of [his] emotions." The trial court asked Defendant if he was "putting on a front" and attempting to manipulate the court by using oxygen in the courtroom. Defendant denied that allegation and stated that he does not have a right lung and has diabetes, high blood pressure and kidney problems. Defense counsel noted that Defendant attempted to obtain documentation from his doctor about his medical condition. The trial court stated the sentencing range and that it reviewed the required sentencing factors. It noted some of the relevant factors, including that a firearm was used and the victim's conduct induced the crime. The trial court sentenced Defendant to 25 years at hard labor with credit for time served.

2

On November 13, 2019, Defendant filed a motion to reconsider sentence and argued that the trial court failed to consider his age and health. A hearing on this motion was held on September 28, 2020. The trial court noted that Defendant's medical records were submitted prior to sentencing and that it considered his age and health. Defense counsel shared that he learned after sentencing that Defendant has cancer but that he had no additional information that would mitigate Defendant's sentence. The trial court denied the motion to reconsider sentence.

In *Zeigler I*, Defendant appealed his conviction and sentence. This court affirmed his conviction. Finding that the 25-year sentence at hard labor was unconstitutionally excessive, this court vacated the sentence and remanded for resentencing.[1] This court provided direction regarding a constitutionally reasonable sentence and dictated a sentencing range of 10 to 20 years at hard labor.

On remand, a resentencing hearing was held on June 20, 2022. The trial court stated that it felt the 25-year sentence was appropriate but that it had to follow the *Zeigler I* court's order. It noted that the state did not appeal the range of 10 to 20 years at hard labor. It explained its reasons for sentencing Defendant to 25 years and that it did not have information about his health to consider as a mitigating factor. It asked if Defendant had any medical records for it to consider when resentencing him. The defense did not offer any records and explained that Defendant had not had any medical treatment during his incarceration. The trial court adopted the reasons it

---

[1] This court was not unanimous regarding Defendant's sentence. One judge concurred in affirming Defendant's conviction but dissented from the ruling on his sentence because he would have affirmed the sentence.

articulated at the first sentencing hearing and applied them to this resentencing. The trial court then sentenced Defendant to 20 years at hard labor with credit for time served.

Defendant filed a motion to reconsider sentence, and a hearing on that motion was held on August 18, 2022. The trial court denied the motion.

Defendant appeals his sentence.

**ARGUMENTS**

*Excessive Sentence*

In his first assignment of error, Defendant argues that the trial court erred in imposing an unconstitutionally excessive sentence. He states that the trial court failed to properly consider the La. C. Cr. P. art. 894.1 factors and refused to consider his age and health when imposing the sentence. He asserts that it was his counsel's duty to provide the trial court with evidence of his poor health and that the state failed by not having this information in his presentence investigation report.

The state argues that a reduced sentence of 20 years at hard labor is not excessive and that the aggravating facts and circumstances of this case support the sentence imposed. It contends that the trial court gave proper weight to Defendant's age and health and notes that Defendant's poor health was no deterrent to him finding a gun and killing an unarmed victim. It argues that Defendant was indicted on second degree murder and benefited from the trial court finding him guilty of the responsive verdict of manslaughter.

An appellate court utilizes a two-pronged test in reviewing a sentence for excessiveness. First, the record must show that the trial court complied with La. C. Cr. P. art. 894.1. *State v. Smith*, 433 So. 2d 688 (La. 1983). The

4

trial judge need not articulate every aggravating and mitigating circumstance outlined in art. 894.1, but the record must reflect that he adequately considered these guidelines in particularizing the sentence to the defendant. *Id.* The important elements the trial court should consider are the defendant's personal history, prior criminal record, seriousness of offense and the likelihood of rehabilitation. *State v. Jones*, 398 So. 2d 1049 (La. 1981). There is no requirement that specific matters be given any particular weight at sentencing. *State v. DeBerry*, 50,501 (La. App. 2 Cir. 4/13/16), 194 So. 3d 657, *writ denied*, 16-0959 (La. 5/1/17), 219 So. 3d 332.

Second, the court must determine whether the sentence is unconstitutionally excessive. A sentence violates La. Const. art. I, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. *State v. Smith*, 01-2574 (La. 1/14/03), 839 So. 2d 1, *citing State v. Bonanno*, 384 So. 2d 355 (La. 1980).

The trial court has wide discretion in the imposition of sentences within statutory limits, and the sentence imposed should not be set aside as excessive in the absence of a manifest abuse of discretion. *State v. Abercrumbia*, 412 So. 2d 1027 (La. 1982). On review, an appellate court does not determine whether another sentence may have been more appropriate, but whether the trial court abused its discretion. *State v. Williams*, 03-3514 (La. 12/13/04), 893 So. 2d 7, *citing State v. Cook*, 95-2784 (La. 5/31/96), 674 So. 2d 957.

La. R.S. 14:31(B) states that whoever commits manslaughter shall be imprisoned at hard labor for not more than 40 years.

5

The trial court did not abuse its discretion when resentencing Defendant to 20 years at hard labor. In *Zeigler I*, this court determined that the trial court complied with La. C. Cr. P. art. 894.1 at the first sentencing hearing. At resentencing, the trial court adopted its reasoning from the first sentencing hearing and also noted that Defendant had not provided any information regarding his health. This court in *Zeigler I* also determined that 20 years at hard labor is the maximum sentence that would be constitutionally reasonable. At resentencing, the trial court acted within this guideline when it imposed a 20-year sentence. Considering the facts of this case, the 20-year sentence is not grossly out of proportion to the seriousness of the offense and is not unconstitutionally excessive.

Accordingly, this assignment of error lacks merit.

*Ineffective Assistance of Counsel*

In his second assignment of error, Defendant argues that he was denied effective assistance of counsel at resentencing. He states that his counsel knew the presentence investigation report was not complete with his medical records but failed to present any records to the court for consideration as a mitigating factor.

The state argues that Defendant was not denied effective assistance of counsel at resentencing. It asserts that Defendant has not shown how he was prejudiced by his counsel's failure to submit medical records. It contends that defense counsel zealously represented Defendant and submitted medical records to the trial court prior to a September 2020 hearing on Defendant's first motion to reconsider sentence. The state argues that the trial court did consider Defendant's age and health when finding him guilty of manslaughter rather than second degree murder and imposing a mid-level

6

sentence. It contends that the trial court is not required to find Defendant's illness and disability to be a mitigating factor because his health did not prevent his criminal conduct.

A claim of ineffective assistance of counsel is generally not urged on appeal but, instead, is raised in the trial court through the means of an application for post-conviction relief. *State v. Robertson*, 53,970 (La. App. 2 Cir. 6/30/21), 322 So. 3d 937. However, when the record is sufficient, an appellate court may resolve this issue on direct appeal in the interest of judicial economy. *Id.*

The right of a defendant in a criminal proceeding to the effective assistance of counsel is mandated by U.S. Constitutional Amendment VI. *State v. Wry*, 591 So. 2d 774 (La. App. 2 Cir. 1991). A claim of ineffective assistance of counsel is analyzed under the two-prong test developed by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). To prevail, the defendant first must show that counsel's performance was deficient, i.e., that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. *Id.* Second, the defendant must show that the deficient performance prejudiced his defense, i.e., that counsel's errors were so serious as to deprive the defendant of a fair trial and that but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.*

A deficient performance is established by showing that the attorney's actions fell below the standard of reasonableness and competency required for attorneys in criminal cases and is evaluated from the attorney's perspective at the time of the occurrence. *State v. Robertson*, *supra*, *citing*

*Strickland v. Washington*, *supra*. A reviewing court must give great deference to the trial counsel's judgment, tactical decisions and trial strategy, strongly presuming he has exercised reasonable professional judgment. *State v. Robertson*, *supra*.

Although ineffective assistance of counsel claims are more properly raised by an application for post-conviction relief, the record is sufficient to consider Defendant's allegations that his counsel failed to provide evidence to prove that his poor health warranted a lesser sentence. Defendant has not shown that his counsel's performance was deficient or that any deficient performance by his counsel prejudiced his defense. To the contrary, the record shows that defense counsel raised the issue of Defendant's health numerous times, and the trial court considered Defendant's age and health when sentencing him. The trial court questioned defense counsel and Defendant about his health at the first sentencing hearing and reviewed Defendant's medical records prior to the first reconsideration of sentence hearing.

Accordingly, this assignment of error lacks merit.

## CONCLUSION

For the foregoing reasons, we affirm the sentence of Defendant Lorenzo Zachery Zeigler.

**AFFIRMED.**