LOLLEY, J.
| following a jury trial in the Fifth Judicial District Court, Parish of West Carroll, State of Louisiana, Ernest J. Apodaca was convicted of two counts of attempted first degree murder and two counts of aggravated criminal damage to property. He was subsequently sentenced to 35 years at hard labor without benefits for each count of attempted first degree murder and to 5 years at hard labor for each count of aggravated criminal damage to property, to be served concurrently. Apodaca now appeals. For the following reasons, we affirm his convictions and sentences.
Facts
During the early morning hours of January 7, 2012, Officer Danny Frasier, of the Oak Grove Police Department, responded to a dispatch call reporting that shots had been fired at 209 Oak Street, Oak Grove, Louisiana. When Off. Frasier arrived at the scene, a man with a shotgun fired two shots at him. Shortly thereafter, the same man fired a shot at Chief Johnny Moss, chief of the Oak Grove Police Department, who was driving by the scene to assess the situation. Both officers’ patrol units sustained damage to the driver’s sides from the gunfire, and Off. Frasier was hit in the shoulder. A standoff ensued, during which time the perpetrator continued to fire shots into the air and threaten the officers. Several hours later, Ernest J. Apodaca was taken into custody after the Ouachita Parish SWAT Team threw a “flash bomb” into his vehicle.
Apodaca was charged with two counts of attempted first degree murder, in violation of La. R.S. 14:27 and La. R.S. 14:30, and two counts of aggravated criminal damage to property, in violation of La. R.S. 14:55. |2Apodaca pled not guilty and not guilty by reason of insanity, and a sanity commission was appointed. After a sanity hearing, the trial court found Apo-daca competent to stand trial, and a jury trial commenced. Following closing arguments, the jury unanimously found Apoda-ca guilty as charged of two counts of attempted first degree murder and two counts of aggravated criminal damage to property. The trial court ordered the preparation of a presentence investigation report (“PSI”).
Subsequently, a sentencing hearing was held. The trial court reviewed the PSI, stated that it was aware of the facts of this case, and noted that the jury found that Apodaca had the requisite intent to commit the crimes as charged. The trial court asserted that it could impose consecutive sentences, but that it would not do so considering Apodaca’s disturbed emotional and mental history. So considering, the trial court sentenced Apodaca to 35 years at hard labor without the benefit of parole, probation, or suspension of sentence for each count of attempted first degree murder, and 5 years at hard labor for each count of aggravated criminal damage to property. The sentences were ordered to *469 be served concurrently. After Apodaca’s motion to reconsider his sentences was denied by the trial court, this appeal followed.
Discussion

Sufficiency of the Evidence

In his first assignment of error, Apodaca submits that the evidence adduced at trial was insufficient to prove he committed the offenses of attempted first degree murder and aggravated criminal damage to property. [¡¡Apodaca contends that he was intoxicated and suicidal and did not have the specific intent to kill necessary to support his convictions for attempted first degree murder, Additionally, Apodaca argues that the state failed to prove he was guilty of aggravated criminal damage to proper ty, because it was not foreseeable that human life would be endangered considering the weapon and shells Apodaca used from a distance of 30 yards. We disagree.
The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the-light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); State v. Tate, 2001-1658 (La.05/20/03), 851 So.2d 921, cert. denied, 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004); State v. Carter, 42,894 (La.App.2d Cir.01/09/08), 974 So.2d 181, writ denied, 2008-0499 (La.11/14/08), 996 So.2d 1086. This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Pigford, 2005-0477 (La.02/22/06), 922 So.2d 517; State v. Dotie, 43,819 (La.App.2d Cir.01/14/09), 1 So.3d 833, writ denied, 2009-0310 (La.11/06/09), 21 So.3d 297. The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, 1994-3116 (La.10/16/95), 661 So.2d 442. A reviewing court accords great deference to a jury’s decision to accept or reject the testimony of a witness in whole or in |4part. State v. Eason, 43,788 (La.App.2d Cir.02/25/09), 3 So.3d 685, writ denied, 2009-0725 (La.12/11/09), 23 So.3d 913.
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence, must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Speed, 43,786 (La.App.2d Cir.01/14/09), 2 So.3d 582, writ denied, 2009-0372 (La.11/06/09), 21 So.3d 299.

Attempted First Degree Murder

Louisiana R.S. 14:30 provides, in pertinent part, that first' degree murder is the killing of a human being:
A.(2) When the offender has a specific intent to kill or to inflict great bodily harm upon a fireman, peace officer, or civilian employee of the Louisiana State Police Crime Laboratory or any other forensic laboratory engaged in the performance of his lawful duties, or when the specific intent to kill or to inflict great bodily harm is directly related to the victim’s status as a fireman, peace officer, or civilian employee.
[[Image here]]
*470 B.(l) For the purposes of Paragraph (A)(2) of this -Section, the term “peace officer” means any peace officer, as defined in R.S. 40:2402, and includes any constable, marshal, deputy marshal, sheriff, deputy sheriff, local or state policeman, commissioned wildlife enforcement agent, federal law enforcement officer, jail or prison guard, parole officer, probation officer, judge, attorney general, assistant attorney ^general, attorney general’s investigator, district attorney, assistant district attorney, or district attorney’s investigator.
Louisiana R.S. 14:27 provides, in pertinent part:
A. Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.
Specific intent to commit a crime is an element of an attempted offense. La. R.S. 14:27. Hence, a conviction of an attempted offense must rest upon sufficient proof that the offender Actively desired to cause the prescribed criminal consequences to follow his act or failure to act and that the offender committed or omitted an act for the purpose and tending directly toward the accomplishing of his object. La. R.S. 14:10 and 14:27; See State v. Cheatham, 38,413 (La.App.2d Cir.06/23/04), 877 So.2d 164, writ denied, 2004-2224 (La.06/24/05), 904 So.2d 717. The state must prove that the offender had the specific intent to kill, not merely intent to cause great bodily harm, in order to convict a defendant of attempted murder. State v. Butler, 322 So.2d 189 (La.1975).
Specific intent is a state of mind and need not be proved as a fact; it may be inferred from the circumstances of the transaction and the actions of the defendant. State v. Graham, 420 So.2d 1126 (La.1982); State v. Allen, 41,548 (La.App.2d Cir.11/15/06), 942 So.2d 1244, writ denied, 2007-0530 (La.12/07/07), 969 So.2d 619. Specific intent is that state of mind that exists when the circumstances indicate the offender actively | Bdesired the prescribed criminal consequences to follow his act or failure to act. State v. Davies, 35,783 (La.App.2d Cir.04/05/02), 813 So.2d 1262, writ denied, 2002-1564 (La.05/09/03), 843 So.2d 389.
The determination of whether the requisite intent is present in a criminal case is -for the trier of fact. State v. Cheatham, supra; State v. Allen, supra. The discharge of a firearm at close range and aimed at a person is indicative of a specific intent to kill or inflict great bodily harm upon that person. State v. Seals, 1995-0305 (La.11/25/96), 684 So.2d 368, cert. denied, 520 U.S. 1199, 117 S.Ct. 1558, 137 L.Ed.2d 705 (1997); State v. Dooley, 38,763 (La.App.2d Cir.09/22/04), 882 So.2d 731, writ denied, 2004-2645 (La.02/18/05), 896 So.2d 30.
.Voluntary intoxication will not excuse, a crime, but it is a defense to a specific intent offense if the circumstances demonstrate that intoxication precluded formation of the requisite intent. See, La. R.S. 14:15(2); State v. Mickelson, 2012-2539 (La.09/03/14), 149 So.3d 178, 183. The defendant has the burden of proving his intoxication defense; thereafter, it falls to the state to negate that defense by showing beyond a reasonable doubt that specific intent was present despite the defendant’s alleged intoxication. Id. Whether voluntary intoxication in a particular case is sufficient to preclude specific intent fe a question to be resolved by the trier- of fact.. Id.
*471 The evidence presented at trial was sufficient to support Apodaca’s convictions for attempted first degree murder. At trial, the testimony established that Apo-daca called 911 reporting that shots had been fired. Officer Frasier testified that when he arrived at the scene, Apodaca pointed |7and fired his shotgun at him as he attempted to exit his unit and fired again as Off. Frasier was. leaving the area. Not only did Apodaca hit Off. Frasier’s patrol car, but Off. Frasier was shot in his left shoulder. > Chief Moss testified that Apodaca fired a shot at- him as well, hitting his patrol unit as he drove by Apodaca’s house to assess the situation. Both law enforcement officers related that thereafter a standoff ensued for several ■ hours. The evidence showed that Apodaca contin--ued to fire his shotgun into the air and threaten the officers who had surrounded his house. Apodaca stated that the officers better shoot him or he was “gonna f— a bunch of [them] up.” Apodaca was ultimately taken into custody only when the SWAT Team threw a “flash bomb”, into his vehicle. According to Off. Frasier, after Apodaca’s arrest, he made statements that he intended to kill the officers and that if he had not fallen asleep, he would have “pulled the trigger again and killed them son of a bitches.” Chief Moss also testified that after the SWAT Team apprehended Apodaca, he was outraged and during booking, stated that he intended to kill some officers and- have some officers, kill him. Louisiana State Police Trooper Ryan Baker was also at the scene and testified. According to Trooper Baker, during his interview of Apodaca after the standoff, Apodaca told Trooper Baker that he did shoot at the police officers and stated that he “intended on killing them.”
In convicting Apodaca of attempted first degree murder, the jury rejected Apoda-ca’s claim that he only, intended to get the, officers to kill him. Apodaca’s specific intent to kill the police officers was demonstrated by his actions of pointing and firing a shotgun at the officers as well as his | «statements ■ immediately afterward that he intended to kill the officers. Further, although there was evidence that Apodaca was intoxicated during the incident, there was. no evidence regarding the level of his intoxication. Moreover, ,he was sober enough to think .coherently through a plan to shoqt at the officers hoping they would shoot back and kill him. Here, the circumstances did not demonstrate that his alleged intoxication precluded formation of the required intent. The evidence clearly indicates that Apodaca knew what he was doing and was sufficient for the jury -to find that Apodaca had the specific intent to kill Off.- Frasier .and Chief Moss, even intoxicated.

Aggravated, Criminal Damage to Property

Louisiana R.S. 14:55 provides:
Aggravated criminal damage to property is the intentional damaging of any structure, watercraft, or movable, wherein it is foreseeable that human life might be endangered, by any means other than fire or explosion.
The crime of aggravated criminal damage to property requires proof of general criminal intent. State v. Brumfield, 329 So.2d 181 (La.1976); State v. Jackson, 42,960 (La.App.2d Cir.02/13/08), 976 So.2d 279. General criminal intent is present when the circumstances indicate that the offender, in the ordinary course of human experience, must have adverted to the prescribed criminal consequences as reasonably certain to result from his act or failure to act. La. R.S. 14:10. Aggravated criminal damage to property is committed upon proof that the accused voluntarily did the act. Brumfield, supra.'
|flIn this case, the evidence is sufficient to support. Apodaca’s conviction for *472 aggravated criminal damage to property. Apodaca fired a shotgun into the driver’s sides of two moving, and thus occupied, police units. Officer Frasier testified that the pellets caused dents along the driver’s side of his patrol unit. Officer Frasier himself was injured. Chief Moss testified that Apodaca’s shotgun was pointed straight in his direction and that pellets hit his unit on the front driver’s side. Regarding damage to his patrol unit, Chief Moss stated that the pellets caused dents along the driver’s side, which were repaired with paint, and three holes in the headlight, which had to be replaced. The endangerment of the lives of the officers was foreseeable, regardless of the low caliber of weapon used by Apodaca.
Considering the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crimes of attempted first degree murder and aggravated criminal damage to property proven beyond a reasonable doubt. Therefore, this assignment of error is without merit.

Excessive Sentence

In his second assignment of error, Apo-daca argues that the sentences imposed were unconstitutionally harsh and excessive in light of the facts and circumstances of the case and his personal history.' Specifically, Apodaca points out that he is’ a 50-year-old first-felony offender with a history of suicide attempts, and he called the police to his location to get the police to kill him as he could not kill himself.' Furthermore, he argues that|inthe officers were not' injured, the shots were fired from a distance, and the damage to the cars was minimal — all warranting a less severe sentence.
A person convicted of attempted first degree murder of a peace officer shall be imprisoned at hard labor for not less than 20" nor more than 50 years without the benefit of parole, probation, or suspension of sentence. La. R.S. 14:30 and 14:27(D)(l)(b). A person convicted of aggravated criminal damage to property shall be fined not more than $10,000.00, imprisoned with or without hard labor for not less than one nor more than 15 years, or both. La. R.S. 14:55.
An appellate court utilizes a two-pronged test in reviewing a sentence for excessiveness. First, the record must show that the trial court took cognizance of the criteria set forth in La. C. Cr. P. art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article. State v. Smith 433 So.2d 688 (La.1983); State v. Lathan, 41,-855 (La.App.2d Cir.02/28/07), 953 So.2d 890, writ denied, 2007-0805 (La.03/28/08), 978 So.2d 297. The articulation of the factual basis for a sentence is the goal of La. C. Cr. P. art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with La. C. Cr. P. art. 894.1. State v. Lanclos, 419 So.2d 475 (La.1982); State v. Swayzer, 43,-350 (La.App.2d Cir.08/13/08); 989 So.2d 267, writ denied, 2008-2697 (La.09/18/09), 17 So.3d 388. The important elements which should be considered are the Indefendant’s personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of offense, and the likelihood of rehabilitation. State v. Jones, 398 So.2d 1049 (La.1981); State v. Ates, 43,327 (La.App.2d Cir.08/13/08), 989 So.2d 259, writ denied, 2008-2341 (La.05/15/09), 8 So.3d 581. There is no requirement that specific matters be given any particular weight at sentencing. State v. Shumaker, 41,547 (La. *473 App.2d Cir.12/13/06), 945 So.2d 277, writ denied, 2007-0144 (La.09/28/07), 964 So.2d 351.
Second, the court must determine whether the sentence is constitutionally excessive. A sentence violates La. Const. Art. I, § 20 if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Dorthey, 623 So.2d 1276 (La.1993); State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Weaver, 2001-0467 (La.01/15/02), 805 So.2d 166; State v. Robinson, 40,983 (La.App.2d Cir.01/24/07), 948 So.2d 379.
The trial court has wide discretion in the imposition of sentences within the statutory limits, and the sentence imposed will not be set aside as excessive absent a manifest abuse of that discretion. State v. Williams, 2003-3514 (La.12/13/04), 893 So.2d 7; State v. Diaz, 46,750 (La. App.2d Cir. 12/14/11), 81 So.3d 228. On review, an appellate court does not determine whether another sentence may have been more appropriate, but 112whether the trial court abused its discretion. State v. Williams, supra; State v. Free, 46,894 (La.App.2d Cir.01/25/12), 86 So.3d 29.
The trial court did not abuse its discretion by sentencing Apodaca to 35 years at hard labor for each eount of attempted first degree murder and to 5 years at hard labor for each count of aggravated criminal damage to property. The trial court adequately considered the facts of this ease, the information in the PSI, and the sentencing guidelines set forth in La. C. Cr. P. art. 894.1. The trial court specifically noted Apodaea’s remorse for his actions, lack of a criminal history, age, family and work history, history of depression, prior suicide attempts, and alleged desire to commit “suicide by cop.” Nevertheless, the facts of this case are particularly serious, as Apodaca lured police officers to his location and fired shots at them. Apodaca’s actions led to a standoff that lasted several hours, during which time he continued to fire shots and threaten officers, thus requiring a SWAT Team to throw a “flash bomb” into his vehicle to take him into custody.
Tragically, peace officers are often killed in the line of duty. Attempting violence and deliberate injury against peace officers is a grievous offense befitting a serious consequence. Considering the facts of this case and this particular defendant, the mi-drange sentences imposed by the trial court do not shock the sense of justice, nor are they grossly disproportionate to the severity of the offense. Apodaca’s sentences are not constitutionally excessive. This assignment of error is without merit.
| ^Conclusion
For the foregoing reasons, the convictions and sentences of Ernest J. Apodaca are affirmed.
AFFIRMED.