Judgment rendered November 20, 2024.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 55,870-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                          Appellee

versus

LAVONTA L. SMITH                            Appellant

* * * * *

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 386,081

Honorable Donald Edgar Hathaway, Jr., Judge

* * * * *

LOUISIANA APPELLATE PROJECT            Counsel for Appellant
By: Peggy J. Sullivan

LAVONTA L. SMITH                       Pro Se

JAMES E. STEWART, SR.                  Counsel for Appellee
District Attorney

JASON WAYNE WALTMAN
REBECCA ARMAND EDWARDS
WILLIAM JACOB EDWARDS
Assistant District Attorneys

* * * * *

Before STONE, STEPHENS, and ROBINSON, JJ.

**ROBINSON, J.**

Lavonta L. Smith ("Smith") was found guilty as charged of one count of attempted first degree murder and one count of aggravated flight from an officer. Both a motion for new trial and a motion for post-verdict judgment of acquittal were filed but denied without hearing. Smith was sentenced to 40 years at hard labor without benefit of parole, probation, or suspension of sentence for the offense of attempted first degree murder, and to 5 years at hard labor and a fine of $1,000 for the offense of aggravated flight from an officer, to be served consecutively. A motion to reconsider sentence was filed and denied without a hearing. Smith appeals his convictions and sentences.

For the reasons set forth below, we AFFIRM the convictions and sentences.

## FACTS AND PROCEDURAL HISTORY

On October 29, 2021, Joshua Sass ("Sass"), then an officer for the Shreveport Police Department, observed a vehicle run a red light and go through a flashing red railroad guard crossing. Sass activated his overhead lights and sirens and attempted to make a traffic stop, but the vehicle fled, reaching speeds of 90 mph in a 40 mph speed zone, running multiple red lights, and leaving the roadway. Three shots were fired by the driver during the pursuit. One bullet hit the exterior of Sass's vehicle, and the other struck Sass's windshield about an inch above the steering wheel. The second bullet did not go through the windshield, but the impact caused glass shards to hit Sass's face making small cuts.

Sass continued pursuit of the car, joined by other officers. Upon reaching a dead-end street, the suspect swerved, went into a ditch, and hit a tree. The suspect then exited the vehicle and fled on foot. Officer Austin Page observed the vehicle pursuit as well as the foot pursuit, and his body camera recorded the foot pursuit. Cpl. Eric Coker ("Coker") testified he saw two officers go behind 145 West 78th, and as he was checking the area, he went through a carport to see Smith lying on the ground next to the house. Coker was unable to radio for assistance, but when Smith began to move from the side of the house, Coker drew his pistol and gave Smith commands to show his hands. Smith was taken into custody without further incident.

During the time of the pursuit, officers located a gun in the front yard of 145 West 78th and a black backpack in the backyard, in the vicinity of Smith's apprehension. The backpack contained, among other things, one 5.56mm cartridge and bank cards in Smith's name. Cpl. Amber Futch ("Futch") testified regarding the seized evidence. The gun, a 5.56 Stag Arms firearm model 715, was processed for DNA, but the results were unsuitable for comparison. Three 5.56mm expended cartridge casings were recovered from the area where the shots were believed to have been fired. The firearms investigator testified the three spent cartridges were fired from the 5.56 Stag Arms firearm model 715 seized in the vicinity of Smith's apprehension. The caliber of the spent cartridges located was consistent with those found in the magazine of the firearm. The 60-capacity magazine contained 45 live cartridges when seized.

Louisiana State Trooper Jeff Brown, formerly with SPD, interviewed Smith following his apprehension, which was recorded. Trooper Brown testified that Smith admitted to driving the vehicle and when Smith was

asked why he didn't stop the vehicle, he stated that "the police were dangerous."

A search warrant was obtained for the vehicle Smith was driving. There was damage to the driver's side rear passenger door, which appeared to be projectile defects below the window. Cpl. Futch testified the defects were from left to right and consistent with someone firing out of the vehicle toward the rear. An additional defect was found in the trunk and the direction of travel appeared to be rear to front, but the officers denied discharging any shots in the direction of the car they were pursuing. Glass was in the driver's seat and rear interior of the vehicle. Mail in Smith's name and a cell phone were also found in the vehicle.

Smith was charged by bill of information with one count of attempted first degree murder and one count of aggravated flight from an officer on December 7, 2021. The bill was amended on November 23, 2022, to specifically allege the attempted first degree murder had been committed "with a dangerous weapon, to wit, a firearm." Prior to trial, a hearing was conducted to determine if the statement provided by Smith was free and voluntary. The trial court ruled the statement was admissible at trial. Jury trial commenced on October 3, 2023, and Smith was found guilty as charged. Smith did not testify or present any evidence at trial. Both a motion for new trial and a motion for post-verdict judgment of acquittal were filed but denied without hearing.

On November 6, 2023, Smith was sentenced to 40 years at hard labor without benefit of parole, probation, or suspension of sentence for attempted first degree murder, and to 5 years hard labor and a fine of $1,000 for aggravated flight from an officer. The sentences imposed were ordered to be

3

served consecutively. The trial court also ordered that both offenses be designated as crimes of violence. A motion to reconsider sentence was filed and denied without a hearing. A pro se notice of appeal was filed prior to sentencing and a motion for appeal was filed by counsel following sentencing. An order was signed granting the appeal and appointing the Louisiana Appellate Project to represent Smith for those purposes. Smith seeks a review of his conviction and sentence.

**DISCUSSION**

*Insufficiency of Evidence – Specific Intent*

Smith argues that the State failed to meet its burden of proof to convict him of attempted first degree murder, because in order to be found guilty, Smith had to possess the specific intent to kill Sass and the evidence does not support that conclusion. He argues that the evidence only supported that he shot from one moving vehicle toward another and that he was trying to get the police officer to back off allowing for escape, which is not sufficient to establish the intent necessary for first degree murder.

The United States Supreme Court set out the standard by which appellate courts are to review the sufficiency of the evidence in criminal prosecutions in *Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). The reviewing court is required to consider whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of the fact could have found the essential elements of the crime beyond a reasonable doubt. *Id*.; *State v. Matthews*, 375 So.2d 1165 (La. 1979); *State v. Tate*, 01-1658 (La. 5/20/03), 851 So. 2d 921, *cert. denied*, 541 U.S. 905, 124 S. Ct. 1604, 158 L. Ed. 2d 248 (2004); *State v. Thornton*, 47,598 (La. App. 2 Cir. 3/13/13), 111 So. 3d 1130. This standard is

4

legislatively embodied in La. C. Cr. P. art. 821 and is applicable in cases involving both direct and circumstantial evidence. *State v. Rhodes*, 29,207 (La. App. 2 Cir. 1/22/97), 688 So. 2d 628, *writ denied*, 97-0753 (La. 9/26/97), 701 So. 2d 980; *State v. Combs*, 600 So. 2d 751 (La. App. 2 Cir.1992), *writ denied*, 604 So. 2d 973 (La.1992). All evidence, both circumstantial and direct, must be sufficient under *Jackson* to satisfy a rational juror that the defendant is guilty beyond a reasonable doubt. *Rhodes*, *supra*.

In reviewing the sufficiency of the evidence, the appellate court may not substitute its appreciation of the evidence for that of the factfinder. *State v. Pigford*, 05-0477 (La. 2/22/06), 922 So. 2d 517. The reviewing court may not assess the credibility of witnesses or reweigh the evidence. *State v. Smith*, 94-3116 (La. 10/16/95), 661 So. 2d 442. Rather, a jury's decision to accept or reject, in whole or in part, the testimony of a witness is accorded great deference. *Thornton*, *supra*. The reviewing court may impinge on the trier of fact's discretion only to the extent necessary to guarantee fundamental due process of law. *State v. Sosa*, 05-0213 (La. 1/19/06), 921 So. 2d 94.

La. R.S. 14:30(A)(2) provides:

> First degree murder includes the killing of a human being when the offender has the specific intent to kill or inflict great bodily harm on a peace officer engaged in the performance of his lawful duties, or when the specific intent to kill or inflict great bodily harm is directly related to the victim's status as a peace officer.

The term "peace officer" includes any "local or state policeman." La. R.S. 14:30(B)(1). Further, La. R.S. 14:27(A) provides:

> Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the

5

offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.

Specific criminal intent is the state of mind that exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. La. R.S. 14:10(1). Proof of specific intent to kill and the commission of an overt act tending toward the accomplishment of that goal is necessary to convict of attempted first degree murder. *State v. Hust*, 51,015 (La. App. 2 Cir. 1/11/17), 214 So. 3d 174, *writ denied*, 17-0352 (La. 11/17/17), 229 So. 3d 928. It is not sufficient to intend to cause great bodily harm, in order to convict a defendant of attempted murder. *State v. Butler*, 322 So. 2d 189 (La. 1975); *State v. Apodaca*, 50,113 (La. App. 2 Cir. 9/30/15), 180 So. 3d 465.

There are several scenarios in which specific intent may be inferred from a defendant's actions. Specific intent can be inferred from the intentional use of a deadly weapon. *State v. Devillier*, 17-572 (La. App. 5 Cir. 10/17/18), 258 So. 3d 230, *writ denied*, 18-01855 (La. 10/8/19), 280 So. 3d 589. Specific intent to kill may be inferred from a defendant's act of pointing a gun and firing it at a person. *Id.*; *Hust, supra*; *Apodaca, supra*. In *Apodaca*, supra, the defendant was found to have specific intent to support attempted first degree murder by pointing and firing his shotgun at police officers as they approached in their patrol cars. Moreover, firing multiple shots at a victim is indicative of "a defendant's culpable state of mind and satisfies the specific intent to kill requirement for murder." *Hust, supra*. In addition, flight and attempt to avoid apprehension are circumstances from which a trier of fact may infer a guilty conscience. *State v. Trammell*,

6

46,725 (La. App. 2 Cir. 11/9/11), 78 So. 3d 205, *writ denied*, 12-0053 (La. 4/20/12), 85 So. 3d 1269.

The trier of fact determines whether the requisite intent is present in a case. On review of that determination, the appellate court reviews the evidence in the light most favorable to the prosecution to determine if sufficient to prove the elements of the offense beyond a reasonable doubt. *State v. Thompson*, 39,454, (La. App. 2 Cir. 3/2/05), 894 So. 2d 1268.

Smith argues that the State failed to prove he possessed the requisite intent to kill Sass. He claims that the facts do not support a finding of specific intent, pointing out that only three shots were fired, leaving 46 cartridges in the magazine, and there was no testimony that he possessed any particular skill in the use of firearms, noting that one projectile actually hit his own vehicle.

The State claims that, viewed under the *Jackson* standard, the evidence was sufficient to convict Smith. It asserts out that the jury heard testimony and observed evidence that Smith fired multiple shots toward Sass's vehicle, one of which was directly in front of his face. Sass further testified that the shots were not fired while the vehicles were traveling at a high rate of speed, rather, Smith had actually slowed down to roughly 40 – 45 mph at the time with Sass directly behind him. The State also noted that when Smith was questioned regarding the shooting, he stated that he felt the police were dangerous.

It is clear from the record that Smith fired multiple shots in the direction of Sass's vehicle during Sass's vehicular pursuit of Smith. This amply supports the trial court's finding the Smith possessed the specific intent to kill Sass.

*Excessive Sentence*

Smith argues that the trial court's imposition of a near maximum sentence for attempted first degree murder, to be served consecutively with a maximum sentence for aggravated flight, is an abuse of discretion because it is unconstitutionally harsh and excessive given the facts and circumstances of the case and it contributes nothing to the ends of justice. He asserts that there is nothing in the record to support a conclusion that he is the worst kind of offender or that this is the worst kind of offense.

Smith asserts that the trial court did not request a presentence investigation and did not reference any personal information about Smith, although a letter was provided by the woman who had raised Smith that provided information about his personal life and upbringing. He notes that the trial court did not mention his personal life, employment history, or his criminal history; instead, it concentrated on the fact that a gun was used in the commission of this offense, listing several factors that all relate to that particular issue. In addition, Smith argues that, even though *accepting* responsibility may be a *mitigating* factor, the trial court inappropriately considered Smith's *failure* to take responsibility as an *aggravating* factor because it contradicts his constitutional right to a trial. Smith further claims that nothing in the record supports a finding that his sentences should be served consecutively given that the offenses arose out of the same transaction, and the trial did not specify a reason for the imposition of consecutive sentences.

The State first argues that Smith should be barred from presenting certain issues on appeal that were not raised in his motion to reconsider sentence. In Smith's motion, he asserted as grounds for reconsideration that

his sentence was "excessive considering the circumstances of the offense, the failure of the Court to adequately consider mitigating factors, and by failing to state adequate grounds for the imposition of the sentence." However, Smith argues on appeal that: (1) the aggravating circumstances identified by the trial court all relate to his use of a firearm; (2) the trial court should not have considered Smith's failure to take responsibility for his actions as an aggravating factor and that such consideration penalized him for exercising his constitutional right to a trial; and (3) the trial court's imposition of consecutive sentences and failure to make findings or state reasons for ordering that the sentences run consecutively.

The State refers to La. C. Cr. P. art. 881.1(E):

E. Failure to make or file a motion to reconsider sentence or to include a specific ground upon which a motion to reconsider sentence may be based, including a claim of excessiveness, shall preclude the State or the defendant from raising an objection to the sentence or from urging any ground not raised in the motion on appeal or review.

This provision "precludes a defendant from presenting sentencing arguments to the court of appeal which were not previously presented to the trial court." *State v. Horton*, 55,468 (La. App. 2 Cir. 2/28/24), 380 So. 3d 841, 850, *writ denied*, 24-00365 (La. 10/1/24), 2024 WL 4355002; *State v. Durham*, 53,922 (La. App. 2 Cir. 6/30/21), 321 So. 3d 525. The State argues that, by not raising these issues on his motion to reconsider sentence, Smith has waived entitlement to appellate review of his sentence on these grounds. *Horton*, *supra*; *Durham*, *supra*.

We agree with the State that Smith is barred from making certain arguments on appeal which were not previously presented to the trial court. Smith clearly failed to make the arguments in his motion to reconsider

9

sentence that all the aggravating circumstances identified by the trial court related to his use of a firearm, and that his failure to take responsibility for his actions should not have been considered as an aggravating factor. Therefore, we find that Smith waived his entitlement to review those issues in determining the excessiveness of his sentence. However, we find that Smith's argument regarding the trial court's imposition of consecutive sentences and failure to make findings or state reasons therefor was preserved for appeal. These arguments were encompassed in the argument in his motion to reconsider sentence that the sentence was "excessive … by failing to state adequate grounds for the imposition of the sentence."

Appellate courts employ a two-prong test when reviewing an excessive sentence claim: (1) the trial record must demonstrate that the trial court complied with the guidelines in La. C. Cr. P. art. 894.1 (list of sentencing factors); and (2) the appellate court must determine if the sentence is constitutionally excessive. *State v. Ladd*, 14-1611 (La. 3/27/15), 164 So. 3d 184 (*per curiam*).

First, the record must show that the trial court adequately considered the guidelines of La. C. Cr. P. art. 894.1. *State v. Smith*, 433 So. 2d 688 (La. 1983); *State v. Taylor*, 54,875 (La. App. 2 Cir. 1/11/23), 354 So. 3d 808, *writ denied*, 23-00297 (La. 11/8/23), 373 So. 3d 297. Articulation of the factual basis for a sentence is the goal of La. C. Cr. P. art. 894.1, not rigid or mechanical compliance with its provisions. *State v. Duncan*, 53,194 (La. App. 2 Cir. 1/15/20), 290 So. 3d 251. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with La. C. Cr. P. art. 894.1. *State v. Lanclos*, 419 So. 2d 475 (La. 1982); *State v. DeBerry*, 50,501 (La. App. 2

10

Cir. 4/13/16), 194 So. 3d 657, *writ denied*, 16-0959 (La. 5/1/17), 219 So. 3d 332. Because the trial court is in the best position to consider the aggravating and mitigating circumstances of the case, it has broad discretion in sentencing. *Taylor*, *supra*. Important elements to be considered are the defendant's personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of the offense, and likelihood of rehabilitation. *Id.*; *State v. Parfait*, 52,857 (La. App. 2 Cir. 8/14/19), 278 So. 3d 455, *writ denied*, 19-01659 (La. 12/10/19), 285 So. 3d 489; *State v. Jones*, 398 So. 2d 1049 (La. 1981); *DeBerry*, *supra*. However, there is no requirement that specific matters be given particular weight at sentencing. *DeBerry*, *supra*; *State v. Shumaker*, 41,547 (La. App. 2 Cir. 12/13/06), 945 So. 2d 277, *writ denied*, 07-0144 (La. 9/28/07), 964 So. 2d 351; *State v. Jackson*, 48,534 (La. App. 2 Cir. 1/15/14), 130 So. 3d 993.

The court may direct consecutive sentences, giving due consideration to the factors outlined in La. C. Cr. P. art. 894.1 and a consideration of whether the defendant poses an unusual risk of harm. *State v. English*, 582 So. 2d 1358 (La. App. 2 Cir. 1991), *writ denied*, 584 So. 2d 1172 (La. 1991). La. C. Cr. P. art. 883 provides:

> When the convictions for two or more offenses are based on the same act or transaction, or are part of a common scheme or plan, the terms of imprisonment shall be concurrent unless there is a specific directive they be served consecutively.

The Louisiana Supreme Court in *State v. Walker*, 00-3200 (La. 10/12/01), 799 So. 2d 461, explained:

> Although La. C. Cr. P. art. 883 favors imposition of concurrent sentences for crimes committed as part of the same transaction or series of transactions, a trial court retains the discretion to impose consecutive penalties in cases in which the offender's past criminality or other circumstances in his background or in

11

the commission of the crimes justify treating him as a grave risk to the safety of the community.

The second prong to reviewing an excessive sentence claim is the court's determination of whether the sentence is constitutionally excessive in violation of La. Const. art. I, §20. A sentence is constitutionally excessive if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. *State v. Dorthey*, 623 So. 2d 1276 (La. 1993); *State v. Bonanno*, 384 So. 2d 355 (La. 1980); *State v. Bell*, 53,712 (La. App. 2 Cir. 1/13/21), 310 So. 3d 307; *State v. Jackson*, 51,575 (La. App. 2 Cir. 9/27/17), 244 So. 3d 764; *Smith*, *supra*; *Taylor*, *supra*. A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. *State v. Weaver*, 01-0467 (La. 1/15/02), 805 So. 2d 166; *DeBerry*, *supra*; *State v. Modisette*, 50,846 (La. App. 2 Cir. 9/28/16), 207 So. 3d 1108. As a general rule, maximum or near-maximum sentences are reserved for the worst offenders and the worst offenses. *State v. Cozzetto*, 07-2031 (La. 2/15/08), 974 So. 2d 665; *State v. Gibson*, 54,400 (La. App. 2 Cir. 5/25/22), 338 So. 3d 1260, *writ denied*, 22-00978 (La. 3/7/23), 356 So. 3d 1053.

Trial courts have wide discretion in the imposition of sentences within the statutory limits and such sentences should not be set aside as excessive in the absence of a manifest abuse of that discretion. *State v. Williams*, 03-3514 (La. 12/13/04), 893 So. 2d 7; *State v. Trotter*, 54,496 (La. App. 2 Cir. 6/29/22), 342 So. 3d 1116; *Taylor*, *supra*. The issue for the reviewing court is whether the trial court abused its discretion, not whether some other sentence may have been more appropriate. *Williams*, *supra*; *Taylor*, *supra*;

12

*Bell*, *supra*. There must be manifest abuse of the wide sentencing discretion afforded the trial court to sentence within statutory limits. *State v. Mandigo*, 48,801 (La. App. 2 Cir. 2/26/14), 136 So. 3d 292, *writ denied*, 14-0630 (La. 10/24/14), 151 So. 3d 600.

The trial court properly recited the facts of the case established at trial and the applicable sentencing ranges. The court found the three factors under La. C. Cr. P. art. 894.1(A) applicable to Smith – that there was an undue risk that Smith would commit another crime during a period of a suspended or probated sentence, he was in need of correctional treatment in a custodial environment, and a lesser sentence would deprecate the seriousness of the crimes.

The trial court considered both aggravating and mitigating factors under La. C. Cr. P. art. 894.1(B). It noted that Smith knowingly created a risk of death or great bodily harm to more than one person. La. C. Cr. P. art. 894.1(B)(5). The court also noted that Smith was a danger to everyone on the road during the car chase because he was travelling at high rates of speed, ran stop signs and traffic lights, and left the roadway and lanes of travel, and it was fortunate that no one was seriously injured as a result of his actions. The court found that Smith used actual violence in committing the offense and that he used a dangerous weapon. La. C. Cr. P. art. 894.1(B)(6) and (10). The court also found La. C. Cr. P. art. 894.1(B)(18) and (19) to be aggravating factors.

The trial court found that no mitigating factors applied. It noted that there was no provocation for Smith's firing a weapon multiple times at a police officer. Although personal history was not referenced by the court as a mitigating factor, the record indicates that the letter submitted on Smith's

13

behalf from the woman who raised him was received and reviewed by the court. Although Smith claims that the trial court did not request a presentence investigation, the record shows that the defense itself never requested the PSI or any other information that may indicate mitigating factors.

Smith received a 40-year sentence for his conviction of attempted first degree murder, which was well within the statutory limits of imprisonment for not less than 20 years, nor more than 50 years, without benefits. His 5-year sentence plus a $1,000 fine for aggravated flight from an officer was the maximum term of imprisonment,[1] though less than the maximum allowable fine. Notably, even served consecutively, Smith's total imprisonment is still less than the maximum allowable sentence for attempted first degree murder. The trial court adequately considered the aggravating and mitigating factors and the sentences are well supported by the record, especially given the dangerous nature of the crimes, not only risking the death of a peace officer engaged in his duties to serve and protect the community, but to the people who could have easily fallen victim to Smith's erratic and thoughtless flight from the officers. Smith's consecutive sentences are not constitutionally excessive because they are not grossly disproportionate to the severity of the offense and are not shocking to the sense of justice or a needless infliction of pain and suffering.

## CONCLUSION

For the reasons stated hereinabove, Smith's convictions and sentences for are hereby AFFIRMED.

---

[1] La. R.S. 14:108.1(C) was amended following the defendant's conviction, to provide for an increased sentencing range of zero to ten years.